Ronald Edward **RODGERS**, Petitioner,

v.

Lauretta **WILLIAMSON** and William F. Williamson, Respondents.

No. B–3487.

Supreme Court of Texas.

Jan. 17, 1973.

Rehearing Denied Feb. 21, 1973.

---

1. All statutory references are to Vernon's Annotated Civil Statutes.

Thorne, Thorne & Robertson, Inc., Michael A. Robertson, Grand Prairie, for petitioner.

Mayer & Mayer, R. Lewis Nicholson, Dallas, for respondents.

REAVLEY, Justice.

The primary question here is whether a provision in an Illinois adoption decree regarding visitation rights of the natural father is entitled to any effect before the courts of this state. The lower courts have regarded the visitation provision as being no more than a private agreement, and it has been held that the Illinois court terminated all parental rights of the natural father without decreeing that he was to be allowed to visit the child. Tex.Civ. App., 482 S.W.2d 665. We construe the Illinois judgment to decree visitation for the natural father, and we remand the case to

the trial court to determine the matter of visitation as a question of the welfare of the child under present circumstances.

When Lauretta and Ronald Rodgers were divorced in Lubbock County, Texas, in 1965, the custody of their minor son, Scott, was given to the mother, Lauretta. She then married William F. Williamson and moved to Illinois, and in 1969 they sought to adopt Scott by petition filed in the Circuit Court of Cook County. Ronald Rodgers was notified by mail of the petition and went to Chicago to employ counsel to act and appear on his behalf. Before the court acted on the petition for adoption, Rodgers and the Williamsons, each represented by counsel, entered into an agreement whereby Rodgers agreed to consent to the adoption and the Williamsons agreed to allow Rodgers to visit his son at designated times.

The Illinois court granted the adoption on August 7, 1969 by a decree which specifically incorporated a stipulation of the parties which set out the times and terms of Rodgers' visitation with Scott.

The Williamsons subsequently returned to Texas and now reside in Dallas. Rodgers lives in nearby Arlington. All parties observed the visitation schedule through Christmas of 1970. On April 15, 1971, Rodgers instituted this action by filing a "petition to enforce visitation" in the Juvenile Court of Dallas County in which he alleged that the Williamsons had refused to allow him to visit Scott and asked the court to order a new schedule for visitation because of the present proximity of the parties. The Williamsons filed a cross-action seeking a declaratory judgment that the alleged visitation rights were unenforceable. The trial court and court of civil appeals have held to this effect and in favor of the Williamsons.

■ Our disagreement with those courts is upon the construction of the judgment of the Illinois court. We view the visitation provision to be part of the court's order rather than a personal agree-

ment of the natural father and the adoptive parents to which reference is made by that court. The details of the natural father's visitation appear on a separate sheet entitled "stipulation" attached to the court's order. The order recites that the stipulation is attached "and made a part hereof." The language of the "stipulation" so made a part of the court's order is mandatory rather than recitative. It purports to be more than an agreement by the parties. It declares: "That Ronald Rodgers *shall have the right* of visitation with Randall Scott Rodgers at the following times and places . . . ." (Emphasis added). A judgment, like any other written instrument, is to be construed as a whole and each part harmonized and given effect if possible. Lone Star Cement Corp. v. Fair, 467 S.W.2d 402 (Tex.1971); Larrison v. Walker, 149 S.W.2d 172 (Tex.Civ.App. 1941, writ ref'd). The construction of the judgment urged by the Williamsons and adopted below deprives Rodgers of all right of visitation even though the contrary is expressly provided by that judgment. We conclude that the Illinois order did decree visitation for the natural father and that this feature of the order is entitled to full faith and credit as would be given a child custody decree of another state. Bukovich v. Bukovich, 399 S.W.2d 528 (Tex.1966).

■ The contention is made that a decree which orders the adoptive parents to permit the natural father to visit with the child is contrary to public policy and should not be enforced for that reason. This is a decision we are at liberty to make since the Supreme Court of the United States has not held that an equitable decree of one state must be given full faith and credit by a sister state. *See*, Restatement (Second) of Conflicts § 102 Comment c (1971). The Williamsons point to Vernon's Ann.Civ.St. art. 46a § 9 (1969), as evidencing the public policy of this state to be that a natural parent should not be allowed to visit his child after the child has been adopted by another. That section

provides in part: "When a minor child is adopted in accordance with the provisions of this Article, all legal relationship and all rights and duties between such child and its natural parents shall cease and determine . . . ." They argue that this provision contemplates a total and final severance of legal relations between natural parent and child after adoption, and this is clearly so. Patton v. Shamburger, 431 S.W.2d 506 (Tex.1968); Smith v. Painter, 408 S.W.2d 785 (Tex.Civ.App. 1966, writ ref'd n. r. e.), 412 S.W.2d 28 (Tex.1967).

■ The Illinois decree did terminate Rodgers' rights as a parent of Scott. It would almost always follow that the court would not preserve a right of visitation for the one in Rodgers' position. The courts of other states have held that trial court orders to this effect constitute error and that private agreements of that nature are unenforceable. Spencer v. Franks, 173 Md. 73, 195 A. 306, 114 A.L.R. 263 (1937); Jouett v. Rhorer, 339 S.W.2d 865 (Ky.Ct. App.1960); Whetmore v. Fratello, 197 Or. 396, 252 P.2d 1083 (1953); Stickles v. Reichardt, 203 Wis. 579, 234 N.W. 738 (1931). It must be emphasized that the visitation rights of Ronald Rodgers do not emanate from a parental status—or from a private agreement relinquishing parental rights— but from the specific provisions of a final Illinois decree. Whether it would be error for a Texas court to enter such a decree is not our question. Our question is similar to that of California v. Copus, 158 Tex. 196, 204, 309 S.W.2d 227, 232 (1958) where this court stated:

> To justify a court in refusing to enforce a right of action which accrued under the law of another state, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that for some other such rea-

son the enforcement of it would be prejudicial to the general interests of our own citizens.

Evidently the Illinois court felt that it would be to the best interest of Scott for his natural father to visit him at designated times and places. We find no compelling reason of public policy to deny effect to the Illinois decree.

■ It therefore becomes necessary to remand the case to the trial court to decide the matter of visitation under the proper rules and according to the welfare of the child under present circumstances. In making this decision, the trial court has broad discretion. It is not necessary for either party to show the change of circumstances required for a change of custody. If the prior order is unworkable and inappropriate, the trial court may modify it. Boney v. Boney, 458 S.W.2d 907 (Tex. 1970); Leithold v. Plass, Tex., 413 S.W.2d 698 (1967); Schwartz v. Jacob, 394 S.W. 2d 15 (Tex.Civ.App.1965, writ ref'd n. r. e.). Visitation may now be denied to the natural father if the present circumstances of the child require it. Even a divorced father who retains parental rights and responsibilities may be denied visitation. Hill v. Hill, 423 S.W.2d 943 (Tex.Civ. App.1968, no writ); See, Boney v. Boney, 458 S.W.2d 907, 910 (Tex.1970). It should be presumed that the circumstances at the time of the Illinois decree were such that visitation between Scott and his natural father was best for the welfare of the boy. The trial court may be required to decide whether that visitation has now become adverse to his welfare. If it should be continued, the court will decide upon appropriate terms.

The judgment of the court of civil appeals is reversed; the cause is remanded to the trial court.