**Timothy Hugh QUEEN, Appellant,**

v.

**Peter GOEDDERTZ and Kathryn Goeddertz, Appellees.**

No. 09–00–395 CV.

Court of Appeals of Texas, Beaumont.

Submitted on June 11, 2001.

Decided July 12, 2001.

---

**22.** *Id.*

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

BURGESS, Justice.

Timothy Hugh Queen appeals an order from the trial court dismissing his bill of review. Queen's bill of review contests the termination of his parental rights and adoption of his child, S.N.G., by Peter Goeddertz. (Peter was married to S.N.G.'s mother, Kathryn Paulette Ferguson, and filed for adoption as S.N.G.'s stepparent. *See* Tex. Fam. Code Ann. § 102.005 (Vernon 1996)). Queen's rights were terminated and his daughter adopted by a single decree entered November 16, 1992.

Appellee does not contest Queen's right to bring a bill of review and the trial court did not find the attack barred.[1] Rather, the trial court's order dismissing the bill states, "**TIMOTHY QUEEN** failed to show a meritorious defense and the elements required for a Bill of Review." Queen's defense is that the affidavit of relinquishment of parental rights was executed involuntarily because it was executed in exchange for an unenforceable promise, namely, visitation rights.

The affidavit of relinquishment of parental rights contains the following provision in the fifth paragraph: "I freely and voluntarily give and relinquish to the above-named managing conservators all of my parental rights, powers, duties and privileges, provided, and subject to the understanding that I will have reasonable visitation rights with my child, identifying myself as a friend of the family." By hand, "reasonable visitation" is put in pa-

James Miller, State Counsel for Offenders, Huntsville, for appellant.

Bert Steinmann, Sunday & Associates, P.C., The Woodlands, for appellees.

---

1. *See* Act of June 15, 1973, 63rd Leg., R.S., ch. 543, § 1, 1973 Tex.Gen.Laws 1411, 1431, *amended by* Act of June 18, 1987, 70th Leg., R.S., ch. 553, § 2, 1987 Tex.Gen.Laws 2218 (current version at Tex.Fam.Code Ann. § 162.012 (Vernon Supp.2001)); *In re T.R.R.,* 986 S.W.2d 31, 35 (Tex.App.—Corpus Christi 1998, no pet.).

rentheses and an arrow is drawn to the handwritten sentence, "Reasonable visitation rights to be monthly visits not more and not less than. K.G." Again, in the ninth and final paragraph, is the provision: "It is [in] the best interest of my child that this be my last parental act and deed, again subject to the understanding that I will have reasonable visitation rights with my child, identifying myself as a friend of the family." The record does not contain a separate decree of termination. Rather, in the Decree of Adoption, following the provision granting the adoption, is the handwritten declaration, "And, the former parent-child relationship between the child and said Timothy Hugh Queen is terminated."

Peter Goeddertz testified he was aware Queen had retained visitation rights in his affidavit but did not bring it to the Court's attention. Peter also testified he was not aware that Taylor Hancock, the attorney representing him and Kathryn, brought it to the Court's attention. To his knowledge, neither Kathryn nor Hancock made any mention of the agreement at the hearing. Peter said he "was in agreement" and "went along with the agreement." According to Peter, the handwritten material was added to the affidavit because it "was a stipulation that Mr. Queen required." Peter concurred the agreement had always been workable. Peter testified it was his understanding that visitation would commence once Queen was out of jail. Peter testified he did not know Queen would not be allowed visitation when he signed the affidavit.

Kathryn testified she made the handwritten addition to the affidavit because "Tim would not relinquish his rights without that being in the clause. And I was told when I called Taylor's office, just write it in and initial it and we would get it in the paperwork ." Kathryn testified that

Taylor said "if I initialed it, it would be legalized and in the paperwork." Kathryn also told the court: "We were all in front of the judges during the adoption. And I asked the paralegal, I said, 'There was nothing brought up on the clause about Tim's visitation.' And she told me, 'It will be in the legal—it will be in the paperwork. Doesn't need to be discussed. It's already in there, it's already been signed, it's going to be in the legal adoption papers. So you don't need to worry about it.' This is what I was told."

Taylor Hancock testified he represented both Kathryn and Peter in the adoption. According to Hancock's testimony, the affidavit was prepared by him but he did not write the addition regarding monthly visits. Hancock testified the addition was not prepared at his direction and he did not advise Kathryn to make that addition. According to Hancock, Kathryn called and told him it was necessary to have that in there and he said, "Fine. Write it in and initial it before it's signed by Mr. Queen." Hancock agreed the affidavit was prepared with the intent to allow Queen to retain visitation rights. Hancock acknowledged the affidavit is not witnessed. Hancock admitted he was aware the affidavit was not witnessed when he proceeded to get the decree of adoption entered. Hancock testified he did not recall, but did not believe he advised the Court the affidavit was not witnessed. Hancock explained that it was his feeling "this visitation clause would be honored regardless of whether it was legally enforceable or not. It was an honorable deal made between the mother and the— and the biological father. And the fact that it perhaps wouldn't stand a protective order didn't enter my mind." Hancock testified he believed there was a conversation with the judge about the father having to have some visitation. Hancock testified that at the time he was not aware that the family

code did not allow for a parent to retain visitation rights once parental rights were terminated. Hancock testified that at the time he had no reason to believe that either Peter or Kathryn were not going to allow visitation.

Queen testified the only reason he executed the affidavit was his belief it would be a legally binding agreement through which he could enforce his visitation rights. According to Queen, it was not until Peter began preventing contact with his daughter that he learned the agreement was not enforceable.

"A bill of review is an equitable proceeding designed to prevent manifest injustice." *French v. Brown*, 424 S.W.2d 893, 895 (Tex.1967). Before a bill of review may be invoked to set aside a final judgment, a litigant must allege and prove that, unmixed with any fault or negligence of his own, he was prevented from making a meritorious defense either by the fraud, accident or wrongful act of the other party or by a mistake or error of the court or a court official in the discharge of official duties. *See Baker v. Goldsmith*, 582 S.W.2d 404, 406–07 (Tex.1979).

As the evidence set forth above establishes, all parties were aware Queen executed the affidavit of relinquishment based solely upon the promise of continued visitation with his daughter. Further, there is no dispute that Peter, Kathryn and Queen all believed the promise was enforceable. Hancock did not know if the agreement was enforceable, but did not relay that to his clients. The affidavit, which was the only basis for terminating Queen's parental rights, contains the promise—twice. In executing the affidavit, Queen also waived his right to "any further notice with respect to this suit." Thus, he never received a copy of the adoption decree that failed to include the bargained-for visitation rights. Initially

the agreement was kept; so Queen had no reason to know he did not, in fact, have any such rights.

"Because of the very nature of a *voluntary* relinquishment of parental rights, ... it is implicit ... that such an affidavit be executed voluntarily." *Neal v. Texas Dep't of Human Serv.*, 814 S.W.2d 216, 218 (Tex.App.—San Antonio 1991, writ denied). Because it waives a constitutional right, an affidavit of relinquishment must also be made knowingly, intelligently, and with full awareness of its legal consequences. *See In re V.R.W.*, 41 S.W.3d 183, 192 (Tex.App.—Houston [14th Dist.] 2001, pet. denied). Consequently, an involuntarily executed affidavit is a complete defense to a termination decree that was based solely upon a finding that the parent executed an affidavit of relinquishment of parental rights. *See Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex.App.—Austin 2000, pet. denied).

Appellee is correct that the Supreme Court of Texas has not squarely held a promise such as the one made here to be unenforceable. However, in *Rodgers v. Williamson*, 489 S.W.2d 558 (Tex.1973), the court enforced visitation rights granted to a biological father after termination of his parental rights noting "the visitation rights ... do not emanate from a parental status—or from a private agreement relinquishing parental rights—but from the specific provisions of a final Illinois decree." *Id.* at 561. The court reserved the question of "[w]hether it would be error for a Texas court to enter such a decree." *Id.* However, the termination of the natural right between parents and their children "is complete, final, and irrevocable. It divests forever the parent and child of all legal rights, privileges, duties, and powers between each other except for the child's right to inherit." *In the Interest of*

*G.M.*, 596 S.W.2d 846 (Tex.1980). *See also* Tex.Fam.Code Ann. § 161.206(b) (Vernon 1996).

■ In the recent case of *Vela v. Marywood*, the Austin Court of Appeals considered a relinquishment affidavit obtained with "empty promises" that the mother would be in the child's life forever, would always have a relationship with the adoptive family and her child, that her requests would be respected by the adoptive family, that the baby would have two mothers, both with input into his life, and that she would be able to see her son grow up. *Vela*, 17 S.W.3d at 762–63. The court found the affidavit was "wrongfully procured" because "Marywood [the agency] never told [the mother] that she would not have any legal right to see her child after she signed the relinquishment affidavit" and held the affidavit void as a matter of law. *Id.* at 763–64. We find it clear that under the Family Code and case authority promises of visitation are unenforceable by a parent who has voluntarily terminated his parental rights.

■ Clearly, Queen proved a meritorious defense—the affidavit was executed involuntarily. Queen was prevented from asserting that defense by virtue of the waiver, which was also conditioned upon the agreement, and by the other party's initial compliance with the agreement. The record does not contain any evidence of Queen's negligence in pursuing his defense. Rather, it reflects a dogged effort to assert his rights of visitation. Consequently, we find the trial court erred in finding Queen failed to show the elements required for a Bill of Review.

Accordingly, we reverse the trial court's order of November 16, 1992, terminating the parental rights of Timothy Hugh Queen and granting the adoption of S.N.G. by Peter Goeddertz, and render judgment in favor of Queen that his parental rights are not terminated. *See Sims v. Adoption Alliance*, 922 S.W.2d 213 (Tex.App.—San Antonio 1996, writ denied).

REVERSED AND RENDERED.