**In re Carol Ann Tarver BULLOCK, Matthew Bullock, and C.A.T.B.**

**No. 09–04–347 CV.**

Court of Appeals of Texas, Beaumont.

Submitted Aug. 27, 2004.

Decided Oct. 7, 2004.

Richard J. Clarkson, Beaumont, for appellants.

Jerry Holmes, Nederland, Norman A. Desmarais, Jr., Port Arthur, for appellee.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

In this original proceeding, relators petition this Court for a writ of mandamus directing respondent, the Honorable Larry Thorne, presiding judge of the 317th District Court, Jefferson County, Texas, to reinstate an order terminating the parental rights of David Castro (real party in interest), and directing respondent to reinstate an order of adoption.

The record herein does not lend itself to clarity or, in some instances, to understanding. No complete chronology of events has been submitted. The pertinent facts appear to be as follows:[1] Carol Ann

---

1. As the parties do not dispute the sequence of events set out in their various pleadings in the instant mandamus action, we rely heavily on the pleadings and attachments in piecing together our rendition of the salient background events. The record before us contains no reporter's record from any of the Brazos County proceedings, and only includes the reporter's record from the August 4, 2004, hearing in Jefferson County. Our record is also very limited with regard to the petitions and motions filed by the parties in any of the Brazos County or Jefferson County proceedings which resulted in the various judgments and orders described. In many instances, we are not provided with a copy of the judgment or order mentioned by a party, and in other instances we are provided with orders ap-

Tarver Bullock is the natural mother of C.A.T.B., the child at the center of a controversy which has stretched over ten years and two Texas counties. C.A.T.B. was born on September 23, 1994. David Castro is the natural father of C.A.T.B. Matthew Bullock is the husband of Carol Ann Tarver Bullock, their marriage having taken place on February 14, 1995.

## BRAZOS COUNTY LITIGATION

On December 22, 1994, the Office of the Attorney General filed a petition in Brazos County, Texas, to establish David Castro's paternity of C.A.T.B. An order establishing Castro's paternity was signed on May 26, 1995, also in Brazos County. A motion for temporary orders was filed by Castro on September 21, 1995. A "counter-petition" for termination of parental rights was filed by Carol Ann Tarver Bullock on February 5, 1996. Castro filed an amended original answer to the petition to terminate on February 8, 1996. The Brazos County court issued temporary orders for visitation and child support on February [or March] 20, 1996.

While some of the above-described litigation in Brazos County was continuing, Carol, Matthew, and C.A.T.B. moved to Beaumont, Jefferson County, Texas, on July 1, 1995. Following the issuance of the temporary orders for visitation and child support, various arrangements were made by the Bullocks for Castro to have supervised visitation with C.A.T.B. in Beaumont and in College Station, Texas, where Castro resided. These arrangements continued for the next two and one-half years, until there was an apparent breakdown in some aspects of scheduled visitations. Thereafter, on September 21, 1998, a default judgment terminating Castro's parental rights to C.A.T.B. was signed by the presiding judge of County Court at Law No. One of Brazos County, Texas.

On April 18, 2000, Castro filed an original petition for bill of review in County Court at Law No. One of Brazos County, Texas, alleging, *inter alia*, that he was not provided with proper notice of the termination hearing in 1998, and also alleging various defenses to the termination allegations. Following a hearing on Castro's bill of review attended by Castro, Carol, and their respective counsel, the trial court granted the bill of review and rendered the prior default judgment terminating Castro's parental rights to C.A.T.B. void. This ruling was memorialized by a judgment signed on August 29, 2000. Orders transferring the suit affecting parent-child relationship and the bill of review to the 317th District Court in Jefferson County were signed on January 9, 2001. The transferred cases were "# 41168—Suit Affecting the Parent–Child Relationship and Supplementary Counter–Petition for Termination of Parent–Child Relationship," and "# 51082A—Bill of Review." The two cases with separate cause numbers in Brazos County were assigned a single cause number in Jefferson County, "C–179715."

## JEFFERSON COUNTY LITIGATION

The record reflects that, prior to the transfer of the Brazos County litigation to Jefferson County, on April 26, 1999, respondent, as presiding judge of the 317th District Court, Jefferson County, Texas, signed an order granting the adoption of C.A.T.B. by Matthew Bullock. Thereafter, the first Jefferson County event appears to be the respondent's order signed March 5, 2003, under cause number C–179,715,

pearing to be connected with ongoing litigation by Castro in his attempt to establish legal access to C.A.T.B. As such, any background

"fact" set out in this opinion should not be construed as a conclusive finding of any fact for subsequent proceedings.

which recognized the granting of Castro's bill of review, and declared Matthew Bullock's adoption of C.A.T.B. in 1999 void. These two orders—the order granting Castro's bill of review which voided the termination of Castro's parental rights, and the order modifying prior orders which voided Matthew Bullock's adoption of C.A.T.B.—form the basis of relators' mandamus request. However, between the order of March 5, 2003, and the filing of relators' petition for writ of mandamus, filed August 13, 2004, several other events took place between respondent, relators, and Castro.

It appears that respondent was attempting to develop a plan for reunification between Castro and C.A.T.B., as evidenced by a portion of the March 5, 2003, order. A psychological consultant was appointed to conduct interviews with all individuals involved in the suit "for the purpose of exploring the best course of action in reunifying DAVID CASTRO with his child, [C.A.T.B.]." Castro and Carol were ordered to pay one-half of the consultation fee, and were also ordered to promptly contact the psychologist and to cooperate with him concerning the providing of certain required information. On July 22, 2003, respondent entered an order which found Carol failed to comply with the prior orders regarding the psychologist, and further ordered "full and complete compliance" from her.

Apparently the various meetings took place, as the psychologist drafted a letter, dated November 23, 2003, to respondent suggesting guidelines and a plan for reunifying Castro and C.A.T.B. Then, on March 26, 2004, respondent signed a "Trial Scheduling Order," memorializing orders issued on March 5, 2004, which, inter alia, appointed Fran Hudgins as court-appointed monitor, and ordered her "to prepare and execute a reunification plan for the purpose of reunifying the Petitioner, DAVID F. CASTRO, with his child, [C.A.T.B.]." The respondent further ordered that all parties were to participate in the reunification plan as set forth by Ms. Hudgins "in a timely manner." Both Castro and Carol were ordered to contact Ms. Hudgins "not later than March 10, 2004, for the purpose of scheduling initial counseling meetings." On June 23, 2004, respondent conducted a hearing on certain motions, one of which was a second motion filed by Castro in an attempt to establish a reunification schedule. All parties were present with their respective counsel. Respondent's order, signed July 12, 2004, adopted a reunification plan drafted by Ms. Hudgins as "an integral part of this Order." It further ordered both Castro and Carol "to appear in person and comply in accordance with the **Reunification Plan**, at the times, dates and places as specified therein." (emphasis in original) The attached reunification plan listed specific dates, times, and locations each party was to appear and gave a brief description as to what was to occur. The order also established a child support amount and payment schedule for Castro.

On July 15, 2004, Ms. Hudgins drafted a letter to respondent which informed him of the following developments:

> Per your court order, an office visit was set for 7–15–04 from 5 to 6pm. The purpose of the visit was for [C.A.T.B.] to meet with her biological father, David Castro. Mr. Castro arrived at my office at 5pm and waited until 5:30pm for Mr. and Mrs. Bullock to bring [C.A.T.B.]. They never arrived for the appointment, nor did they notify this office of their intention to not show up.

> The Bullock's [sic] have missed four scheduled appointments. The Bullock's [sic] non-compliance with attempts to reunify [C.A.T.B.] with Mr. Castro have

been unsuccessful. Therefore, I request that the court release me from monitoring this case.

On August 4, 2004, respondent conducted a hearing on a Motion For Enforcement filed by Castro. At the conclusion of this evidentiary hearing, respondent found Carol to have been guilty of two separate violations of his order of July 12, 2004, for her wilful refusal to participate in the reunification plan. Respondent sentenced her to twenty-four hours in the Jefferson County Jail, but suspended her commitment and placed her on probation for 180 days, and further ordered her to fully comply with the reunification plan as previously ordered. The contempt order was signed on August 5, 2004. Five days later, respondent denied relators' motion for reconsideration of its orders of July 12, 2004, and March 5, 2003.

In a mandamus proceeding, we review the trial court's decision for an abuse of discretion. *In re University Interscholastic League,* 20 S.W.3d 690, 691 (Tex.2000); *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). To determine if there is an abuse of discretion, we review the entire record. *In re University Interscholastic League,* 20 S.W.3d at 691–92. The relator must establish that the facts and the law permit the trial court to make but one decision. *Id.* at 692. Additionally, the relator must show there is no adequate remedy at law. *Id.*

In the instant case, the specific order relators complain of is respondent's order of August 10, 2004, which denied reconsideration of relators' "Motion For Reconsideration of Order of July 12, 2004, and Setting Aside Grant of Bill of Review, Reinstatement of Adoption, and Stay of Further Orders." The August 10, 2004, order recites that respondent considered relator's motion, attached appendices, the court's complete file, testimony, and arguments of counsel. It is relators' position that the Brazos County order of August 29, 2000, granting Castro's bill of review, and the Jefferson County order of March 5, 2003, recognizing the granting of the bill of review and setting aside Matthew Bullock's adoption of C.A.T.B., were both void because they were in violation of §§ 161.211 and 162.012 of the Texas Family Code. *See* Tex. Fam.Code Ann. §§ 161.211 & 162.012 (Vernon 2002). Each of the sections contains the following language, in pertinent part:

### § 161.211. Direct or Collateral Attack on Termination Order

(a) Notwithstanding Rule 329, Texas Rules of Civil Procedure, the validity of an order terminating the parental rights of a person who has been personally served or who has executed an affidavit of relinquishment of parental rights or an affidavit of waiver of interest in a child or whose rights have been terminated under Section 161.002(b) is not subject to collateral or direct attack after the sixth month after the date the order was signed.

(b) Notwithstanding Rule 329, Texas Rules of Civil Procedure, the validity of an order terminating the parental rights of a person who is served by citation by publication is not subject to collateral or direct attack after the sixth month after the date the order was signed.

. . . .

### § 162.012. Direct or Collateral Attack

(a) Notwithstanding Rule 329, Texas Rules of Civil Procedure, the validity of an adoption order is not subject to attack after six months after the date the order was signed.

Both sections took effect on September 1, 1997, and were applicable to adoption or

termination orders signed on or after that date. See Act of May 28, 1997, 75th Leg., R.S., ch. 601, §§ 1–3, 1997 Tex. Gen. Laws 2118. Relators essentially argue that, because sections 161.211 and 162.012 prohibit direct or collateral attacks on prior termination and adoption orders, the Brazos County Court's order granting Castro's bill of review and respondent's order of March 5, 2003, setting aside its prior adoption order were both void. As we appreciate Relators' assertions in light of their request for mandamus relief, they are arguing that both sections 161.211 and 162.012 are *jurisdictional prerequisites* for any litigant attempting to overturn a termination or adoption order.

■ Because our review of respondent's refusal to reinstate the termination and adoption orders is for an abuse of discretion, we first examine the viability of the order granting Castro's bill of review. We do this because a valid termination order must exist before a petition for adoption can be considered by a court. *See Schiesser v. State,* 544 S.W.2d 373, 377 (Tex. 1976); Tex. Fam.Code Ann. § 162.001(b) (Vernon Supp.2004) (To adopt a child in Texas, absent the execution of an affidavit of relinquishment of parental rights, the parent-child relationship of at least one living parent must be terminated, or a suit for termination be joined with a suit for adoption.). Therefore, if the Brazos County Court at Law's order granting Castro's bill of review is not void for lack of jurisdiction to consider the issue, Castro's parental rights to C.A.T.B. were reestablished and respondent, recognizing this, could not have abused his discretion in denying the request to reinstate his prior adoption order. If, however, the order granting the bill of review is void, then the respondent exceeded his jurisdiction in recognizing the "void" order granting Castro's bill of review. In such a situation,

mandamus relief would be appropriate, and relator would not have to show he had no adequate remedy by appeal. *See In re Southwestern Bell Tel. Co.,* 35 S.W.3d 602, 605 (Tex.2000) (orig.proceeding).

In *Mayberry v. American Home Assur. Co.,* 122 S.W.3d 455, 458 (Tex.App.-Beaumont 2003, no pet.), we found a particular sub-section of the Texas Labor Code not to be a jurisdictional prerequisite for the trial court's exercise of authority to review a decision by the Worker's Compensation Commission. Although the petitioner in *Mayberry* timely filed his suit, he did not comply with the Labor Code sub-section with regard to the proper venue. *Id.* We relied upon the Texas Supreme Court's decision in *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71 (Tex.2000). Since Dubai was decided, the Supreme Court has reaffirmed its basic holding that not all statutory prerequisites to filing suit are jurisdictional, overruling its prior holding in *Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084 (1926). These recent cases, *University of Texas Southwestern Med. Ctr. at Dallas v. Loutzenhiser,* 140 S.W.3d 351 (Tex.2004), and *Hubenak v. San Jacinto Gas Transmission Co.,* 141 S.W.3d 172 (Tex.2004), along with Dubai, recognize that while a particular statutory requirement may be held to be "mandatory," the failure to satisfy it does not deprive the trial court of subject matter jurisdiction. *See Loutzenhiser,* 140 S.W.3d at 364; *Hubenak,* 141 S.W.3d at 181; *Dubai,* 12 S.W.3d at 73, 74–77 (Court holding the failure to establish a "statutory prerequisite" not jurisdictional, but also referring to the statutory provision in question as a "requirement.").

■ *Dubai* reestablished the doctrine because Texas district courts are courts of general jurisdiction, so they are presumed to have subject matter jurisdiction unless a showing can be made to the contrary. *Dubai,* 12 S.W.3d at 75. "Thus, all claims are

presumed to fall within the jurisdiction of the district court unless the Legislature or Congress has provided that they must be heard elsewhere." *Id.*

In *Hubenak,* the statutory requirement in question was taken from the Texas Property Code provision listing the prerequisites for initiating a condemnation proceeding. *Hubenak,* 141 S.W.3d at 181. The Code provision stated that a petition commencing a condemnation proceeding "must," inter alia, "state that the entity and the property owner are unable to agree on the damages." See Tex. Prop. Code Ann. § 21.012(b)(4) (Vernon 2004). Ultimately, the *Hubenak* Court could find no substantive distinction between the nature of the statutory requirement at issue in *Dubai* and the Property Code's "unable to agree" requirement. *Id.* at 183. The *Hubenak* Court concluded its jurisdictional analysis as follows:

> Thus, although section 21.012's requirements are mandatory, the trial courts in these consolidated cases had jurisdiction over the condemnation proceedings regardless of whether the condemnors satisfied the requirement that the parties "are unable to agree on the damages." We therefore disapprove of those court of appeals decisions that have held or suggested that these statutory requirements are jurisdictional.

*Id.*

In *Loutzenhiser,* the plaintiff failed to comply with the notice requirement in the Texas Tort Claims Act prior to filing her medical malpractice suit against a state university medical center. *Loutzenhiser,* 140 S.W.3d at 358. *See* also Tex. Civ. Prac. & Rem.Code Ann. § 101.101(Vernon 1997). Although holding that lack of such notice to the governmental unit is a "complete defense to suit," the Texas Supreme Court further held that lack of such notice did not deprive the trial court of subject matter jurisdiction. *Loutzenhiser,* 140 S.W.3d at 354. The Court initially recognized *Dubai*'s holding, and then proceeded to determine the legislative intent of section 101.101's notice requirement. *Id.* at 358–61. The Court also recognized its prior holding in *Essenburg v. Dallas County,* 988 S.W.2d 188 (Tex.1998), to the effect that a statute providing "a person may not sue on a claim against a county unless the person has presented the claim to the commissioners' court and the commissioners' court has neglected or refused to pay all or part of the claim" was not jurisdictional, as this "presentment" requirement was intended to promote settlement, not to define subject matter jurisdiction. *Id.* at 361 (citing *Essenburg,* 988 S.W.2d at 189.). The Court in *Loutzenhiser* further noted that, in other jurisdictions, when notice or limitations provisions pertaining to suits against the government are considered jurisdictional, the statutory language is much clearer than section 101.101. *Loutzenhiser,* 140 S.W.3d at 364 n. 53 (Listing, as one of several examples, a Colorado statutory provision which reads, "Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.").

 In the instant case, neither relators nor real party in interest has cited *Dubai* or any of its progeny. As we appreciate *Dubai,* it has provided an entirely different point of judicial reference for determining whether certain types of litigation have invoked subject matter jurisdiction in Texas trial courts. We recognize, as we must, that the County Court at Law No. One of Brazos County, Texas, is designated by the Legislature as having concurrent jurisdiction with the

district court in family law cases.[2] Acting within its authority as a family law court, the Brazos County Court had jurisdiction to rule on Castro's bill of review[3] of the order terminating his parental rights. It was exercising authority concurrent with the constitutional authority of a district court, notwithstanding the existence of certain statutory requirements in section 161.211. *See Dubai*, 12 S.W.3d at 76. Additionally, because a bill of review is a direct attack on a judgment, only the court rendering the original judgment has jurisdiction over the proceeding. *Richards v. Commission for Lawyer Discipline*, 81 S.W.3d 506, 508 (Tex.App.-Houston [1st Dist.] 2002, no pet.). "The requirement that a bill of review be filed in the same court that rendered the judgment under attack is a matter of jurisdiction, not merely a matter of venue." *Id.* We echo the Texas Supreme Court in saying that, although the requirements of section 161.211 are mandatory, the trial court had jurisdiction over the bill of review regardless of whether Castro satisfied the statutory six month limitations requirement. *See Hubenak*, 141 S.W.3d at 183. Because we find the Brazos County Court had jurisdiction to consider and rule on Castro's bill of review, the resulting order setting aside the prior termination order was not void. Respondent did not abuse his discretion in either refusing to reinstate the termination order or refusing to reinstate the adoption order.

The procedural aspect of the record before us differs to a significant extent from that shown in both *Hubenak* and *Loutzenhiser* in that our relators, unlike the defendants before the Texas Supreme Court, failed to raise an objection based upon section 161.211 to Castro's bill of review before the trial court in Brazos County. The consequence of this was noted by the Court in *Loutzenhiser* when it stated that, while failure of a non-jurisdictional requirement mandated by statute may result in the loss of a claim, that failure must be timely asserted or compliance can be waived. *Loutzenhiser*, 140 S.W.3d at 359. There appears to be nothing in the record before us that indicates the procedural requirements in section 161.211 were brought to the attention of the trial court prior to its granting of the bill of review. In *In re T.R.R.*, 986 S.W.2d 31, 35 (Tex. App.-Corpus Christi 1998, no pet), the Court was presented with the identical argument relators make here. The Corpus Christi court overruled the contention for two reasons, one of which was that the complaining party failed to raise the issue to the trial court at the bill of review hearing. *Id.* The Corpus Christi Court treated it as simple waiver under Tex. R.App. P. 33.1. *Id.* In *Queen v. Goeddertz*, 48 S.W.3d 928, 929 n. 1 (Tex.App.-Beaumont 2001, no pet.), we were not presented directly with the issue but implicitly treated it as waived and proceeded to address the substantive issue brought to us. *Id.*

■ Essentially, section 161.211's six month limitation on attacks on termination rulings is an affirmative defense, which is a proposition a defendant may interpose to defeat a plaintiff's prima facie case. *See Cook Composites, Inc. v. Westlake Styrene*

---

2. *See* Tex. Gov't Code Ann. §§ 25.0231 & 25.0232 (Vernon 2004) (Brazos County Court at Law No. One has concurrent jurisdiction with the district court in family law cases and proceedings.).

3. Normally, the residual four-year statute of limitations applies to bills of review. Tex.

Civ. Prac. & Rem.Code Ann. § 16.051 (Vernon 1997); *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex.1998). Castro's bill of review, filed on April 18, 2000, was filed within four years of the rendition of the default judgment terminating his parental rights, which was signed on September 21, 1998.

*Corp.*, 15 S.W.3d 124, 137 (Tex.App.-Houston [14th Dist.] 2000, pet. dism'd). An affirmative defense does not rebut the factual propositions of the plaintiff's pleading, but, instead, allows the defendant to introduce evidence to establish an independent reason why the plaintiff should not prevail. *See Gorman v. Life Ins. Co. of North America*, 811 S.W.2d 542, 546 (Tex.1991); *Heggy v. American Trading Employee Retirement Account Plan*, 123 S.W.3d 770, 778 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). Our record does not indicate what pleadings, if any, were filed by Carol in response to Castro's petition for bill of review in Brazos County. However, relators do not contend the limitations language of section 161.211 was presented to the Brazos County trial court. The defense of limitations does not bar a plaintiff from filing a lawsuit. *See Matter of the Marriage of Collins*, 870 S.W.2d 682, 684 (Tex.App.-Amarillo 1994, writ denied). As such, Carol was required to plead and present the affirmative defense of limitations, but failed to do so. Coupled with our finding that section 161.211 is not a jurisdictional prerequisite to suit, the procedural default by Carol at the Brazos County bill of review hearing results in our concluding that the relators have failed to establish "that the facts and law permit the trial court to make but one decision." *In re University Interscholastic League*, 20 S.W.3d at 692. It was well within respondent's discretion to deny relators' motion for reconsideration, and refuse to revive either the order terminating Castro's parental rights or the order of adoption. Relators have not established their right to relief by mandamus. We therefore deny relators' petition for writ of mandamus.

WRIT DENIED.