In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-347 CV


____________________



IN RE CAROL ANN TARVER BULLOCK, 


MATTHEW BULLOCK, AND C.A.T.B.







Original Proceeding






OPINION


 In this original proceeding, relators petition this Court for a writ of mandamus
directing respondent, the Honorable Larry Thorne, presiding judge of the 317th District
Court, Jefferson County, Texas, to reinstate an order terminating the parental rights of
David Castro (real party in interest), and directing respondent to reinstate an order of
adoption. 

 The record herein does not lend itself to clarity or, in some instances, to
understanding. No complete chronology of events has been submitted. The pertinent facts
appear to be as follows: (1) Carol Ann Tarver Bullock is the natural mother of C.A.T.B.,
the child at the center of a controversy which has stretched over ten years and two Texas
counties. C.A.T.B. was born on September 23, 1994. David Castro is the natural father
of C.A.T.B. Matthew Bullock is the husband of Carol Ann Tarver Bullock, their marriage
having taken place on February 14, 1995. 

BRAZOS COUNTY LITIGATION


 On December 22, 1994, the Office of the Attorney General filed a petition in Brazos
County, Texas, to establish David Castro's paternity of C.A.T.B. An order establishing
Castro's paternity was signed on May 26, 1995, also in Brazos County. A motion for
temporary orders was filed by Castro on September 21, 1995. A "counter-petition" for
termination of parental rights was filed by Carol Ann Tarver Bullock on February 5, 1996.
Castro filed an amended original answer to the petition to terminate on February 8, 1996. 
The Brazos County court issued temporary orders for visitation and child support on
February [or March] 20, 1996. 

 While some of the above-described litigation in Brazos County was continuing,
Carol, Matthew, and C.A.T.B. moved to Beaumont, Jefferson County, Texas, on July 1,
1995. Following the issuance of the temporary orders for visitation and child support,
various arrangements were made by the Bullocks for Castro to have supervised visitation
with C.A.T.B. in Beaumont and in College Station, Texas, where Castro resided. These
arrangements continued for the next two and one-half years, until there was an apparent
breakdown in some aspects of scheduled visitations. Thereafter, on September 21, 1998,
a default judgment terminating Castro's parental rights to C.A.T.B. was signed by the
presiding judge of County Court at Law No. One of Brazos County, Texas. 

 On April 18, 2000, Castro filed an original petition for bill of review in County
Court at Law No. One of Brazos County, Texas, alleging, inter alia, that he was not
provided with proper notice of the termination hearing in 1998, and also alleging various
defenses to the termination allegations. Following a hearing on Castro's bill of review
attended by Castro, Carol, and their respective counsel, the trial court granted the bill of
review and rendered the prior default judgment terminating Castro's parental rights to
C.A.T.B. void. This ruling was memorialized by a judgment signed on August 29, 2000. 
Orders transferring the suit affecting parent-child relationship and the bill of review to the
317th District Court in Jefferson County were signed on January 9, 2001. The transferred
cases were "#41168 - Suit Affecting the Parent-Child Relationship and Supplementary
Counter-Petition for Termination of Parent-Child Relationship," and "#51082A - Bill of
Review." The two cases with separate cause numbers in Brazos County were assigned a
single cause number in Jefferson County, "C-179715." 


JEFFERSON COUNTY LITIGATION


 The record reflects that, prior to the transfer of the Brazos County litigation to
Jefferson County, on April 26, 1999, respondent, as presiding judge of the 317th District
Court, Jefferson County, Texas, signed an order granting the adoption of C.A.T.B. by
Matthew Bullock. Thereafter, the first Jefferson County event appears to be the
respondent's order signed March 5, 2003, under cause number C-179,715, which
recognized the granting of Castro's bill of review, and declared Matthew Bullock's
adoption of C.A.T.B. in 1999 void. These two orders - - the order granting Castro's bill
of review which voided the termination of Castro's parental rights, and the order
modifying prior orders which voided Matthew Bullock's adoption of C.A.T.B. - - form
the basis of relators' mandamus request. However, between the order of March 5, 2003,
and the filing of relators' petition for writ of mandamus, filed August 13, 2004, several
other events took place between respondent, relators, and Castro.

 It appears that respondent was attempting to develop a plan for reunification
between Castro and C.A.T.B., as evidenced by a portion of the March 5, 2003, order. 
A psychological consultant was appointed to conduct interviews with all individuals
involved in the suit "for the purpose of exploring the best course of action in reunifying
DAVID CASTRO with his child, [C.A.T.B.]." Castro and Carol were ordered to pay
one-half of the consultation fee, and were also ordered to promptly contact the psychologist
and to cooperate with him concerning the providing of certain required information. On
July 22, 2003, respondent entered an order which found Carol failed to comply with the
prior orders regarding the psychologist, and further ordered "full and complete
compliance" from her. 

 Apparently the various meetings took place, as the psychologist drafted a letter,
dated November 23, 2003, to respondent suggesting guidelines and a plan for reunifying
Castro and C.A.T.B. Then, on March 26, 2004, respondent signed a "Trial Scheduling
Order," memorializing orders issued on March 5, 2004, which, inter alia, appointed Fran
Hudgins as court-appointed monitor, and ordered her "to prepare and execute a
reunification plan for the purpose of reunifying the Petitioner, DAVID F. CASTRO, with
his child, [C.A.T.B.]." The respondent further ordered that all parties were to participate
in the reunification plan as set forth by Ms. Hudgins "in a timely manner." Both Castro
and Carol were ordered to contact Ms. Hudgins "not later than March 10, 2004, for the
purpose of scheduling initial counseling meetings." On June 23, 2004, respondent
conducted a hearing on certain motions, one of which was a second motion filed by Castro
in an attempt to establish a reunification schedule. All parties were present with their
respective counsel. Respondent's order, signed July 12, 2004, adopted a reunification plan
drafted by Ms. Hudgins as "an integral part of this Order." It further ordered both Castro
and Carol "to appear in person and comply in accordance with the Reunification Plan,
at the times, dates and places as specified therein." (emphasis in original) The attached
reunification plan listed specific dates, times, and locations each party was to appear and
gave a brief description as to what was to occur. The order also established a child
support amount and payment schedule for Castro. 

 On July 15, 2004, Ms. Hudgins drafted a letter to respondent which informed him
of the following developments: 

 Per your court order, an office visit was set for 7-15-04 from 5 to
6pm. The purpose of the visit was for [C.A.T.B.] to meet with her biological
father, David Castro. Mr. Castro arrived at my office at 5pm and waited
until 5:30pm for Mr. and Mrs. Bullock to bring [C.A.T.B.]. They never
arrived for the appointment, nor did they notify this office of their intention
to not show up.


 The Bullock's [sic] have missed four scheduled appointments. The
Bullock's [sic] non-compliance with attempts to re-unify [C.A.T.B.] with
Mr. Castro have been unsuccessful. Therefore, I request that the court
release me from monitoring this case. 


On August 4, 2004, respondent conducted a hearing on a Motion For Enforcement filed
by Castro. At the conclusion of this evidentiary hearing, respondent found Carol to have
been guilty of two separate violations of his order of July 12, 2004, for her wilful refusal
to participate in the reunification plan. Respondent sentenced her to twenty-four hours in
the Jefferson County Jail, but suspended her commitment and placed her on probation for
180 days, and further ordered her to fully comply with the reunification plan as previously
ordered. The contempt order was signed on August 5, 2004. Five days later, respondent
denied relators' motion for reconsideration of its orders of July 12, 2004, and March 5,
2003. 

 In a mandamus proceeding, we review the trial court's decision for an abuse of
discretion. In re University Interscholastic League, 20 S.W.3d 690, 691 (Tex. 2000);
Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985). To determine if
there is an abuse of discretion, we review the entire record. In re University
Interscholastic League, 20 S.W.3d at 691-92. The relator must establish that the facts and
the law permit the trial court to make but one decision. Id. at 692. Additionally, the
relator must show there is no adequate remedy at law. Id. 

 In the instant case, the specific order relators complain of is respondent's order of
August 10, 2004, which denied reconsideration of relators' "Motion For Reconsideration
of Order of July 12, 2004, and Setting Aside Grant of Bill of Review, Reinstatement of
Adoption, and Stay of Further Orders." The August 10, 2004, order recites that
respondent considered relator's motion, attached appendices, the court's complete file,
testimony, and arguments of counsel. It is relators' position that the Brazos County order
of August 29, 2000, granting Castro's bill of review, and the Jefferson County order of
March 5, 2003, recognizing the granting of the bill of review and setting aside Matthew
Bullock's adoption of C.A.T.B., were both void because they were in violation of §§
161.211 and 162.012 of the Texas Family Code. See Tex. Fam. Code Ann. §§ 161.211
& 162.012 (Vernon 2002). Each of the sections contains the following language, in
pertinent part:

 § 161.211. Direct or Collateral Attack on Termination Order

 (a) Notwithstanding Rule 329, Texas Rules of Civil Procedure, the
validity of an order terminating the parental rights of a person who has been
personally served or who has executed an affidavit of relinquishment of
parental rights or an affidavit of waiver of interest in a child or whose rights
have been terminated under Section 161.002(b) is not subject to collateral or
direct attack after the sixth month after the date the order was signed.


 (b) Notwithstanding Rule 329, Texas Rules of Civil Procedure, the
validity of an order terminating the parental rights of a person who is served
by citation by publication is not subject to collateral or direct attack after the
sixth month after the date the order was signed.


 . . . .


 § 162.012. Direct or Collateral Attack


 (a) Notwithstanding Rule 329, Texas Rules of Civil Procedure, the
validity of an adoption order is not subject to attack after six months after the
date the order was signed. 


 Both sections took effect on September 1, 1997, and were applicable to adoption or
termination orders signed on or after that date. See Act of May 28, 1997, 75th Leg., R.S.,
ch. 601, §§ 1-3, 1997 Tex. Gen. Laws 2118. Relators essentially argue that, because
sections 161.211 and 162.012 prohibit direct or collateral attacks on prior termination and
adoption orders, the Brazos County Court's order granting Castro's bill of review and
respondent's order of March 5, 2003, setting aside its prior adoption order were both void.
As we appreciate Relators' assertions in light of their request for mandamus relief, they
are arguing that both sections 161.211 and 162.012 are jurisdictional prerequisites for any
litigant attempting to overturn a termination or adoption order. 

 Because our review of respondent's refusal to reinstate the termination and adoption
orders is for an abuse of discretion, we first examine the viability of the order granting
Castro's bill of review. We do this because a valid termination order must exist before a
petition for adoption can be considered by a court. See Schiesser v. State, 544 S.W.2d
373, 377 (Tex. 1976); Tex. Fam. Code Ann. § 162.001(b) (Vernon Supp. 2004) (To
adopt a child in Texas, absent the execution of an affidavit of relinquishment of parental
rights, the parent-child relationship of at least one living parent must be terminated, or a
suit for termination be joined with a suit for adoption.). Therefore, if the Brazos County
Court at Law's order granting Castro's bill of review is not void for lack of jurisdiction
to consider the issue, Castro's parental rights to C.A.T.B. were reestablished and
respondent, recognizing this, could not have abused his discretion in denying the request
to reinstate his prior adoption order. If, however, the order granting the bill of review is
void, then the respondent exceeded his jurisdiction in recognizing the "void" order
granting Castro's bill of review. In such a situation, mandamus relief would be
appropriate, and relator would not have to show he had no adequate remedy by appeal. 
See In re Southwestern Bell Tel. Co., 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding).

 In Mayberry v. American Home Assur. Co., 122 S.W.3d 455, 458 (Tex. App.--Beaumont 2003, no pet.), we found a particular sub-section of the Texas Labor Code not
to be a jurisdictional prerequisite for the trial court's exercise of authority to review a
decision by the Worker's Compensation Commission. Although the petitioner in Mayberry
timely filed his suit, he did not comply with the Labor Code sub-section with regard to the
proper venue. Id. We relied upon the Texas Supreme Court's decision in Dubai
Petroleum Co. v. Kazi, 12 S.W.3d 71 (Tex. 2000). Since Dubai was decided, the
Supreme Court has reaffirmed its basic holding that not all statutory prerequisites to filing
suit are jurisdictional, overruling its prior holding in Mingus v. Wadley, 115 Tex. 551, 285
S.W. 1084 (1926). These recent cases, University of Texas Southwestern Med. Ctr. at
Dallas v. Loutzenhiser, 140 S.W.3d 351 (Tex. 2004), and Hubenak v. San Jacinto Gas
Transmission Co., 141 S.W.3d 172 (Tex. 2004), along with Dubai, recognize that while
a particular statutory requirement may be held to be "mandatory," the failure to satisfy it
does not deprive the trial court of subject matter jurisdiction. See Loutzenhiser, 140
S.W.3d at 364; Hubenak, 141 S.W.3d at 181; Dubai, 12 S.W.3d at 73, 74-77 (Court
holding the failure to establish a "statutory prerequisite" not jurisdictional, but also
referring to the statutory provision in question as a "requirement."). 

 Dubai reestablished the doctrine because Texas district courts are courts of general
jurisdiction, so they are presumed to have subject matter jurisdiction unless a showing can
be made to the contrary. Dubai, 12 S.W.3d at 75. "Thus, all claims are presumed to fall
within the jurisdiction of the district court unless the Legislature or Congress has provided
that they must be heard elsewhere." Id. 

 In Hubenak, the statutory requirement in question was taken from the Texas
Property Code provision listing the prerequisites for initiating a condemnation proceeding. 
Hubenak, 141 S.W.3d at 181. The Code provision stated that a petition commencing a
condemnation proceeding "must," inter alia, "state that the entity and the property owner
are unable to agree on the damages." See Tex. Prop. Code Ann. § 21.012(b)(4)
(Vernon 2004). Ultimately, the Hubenak Court could find no substantive distinction
between the nature of the statutory requirement at issue in Dubai and the Property Code's
"unable to agree" requirement. Id. at 183. The Hubenak Court concluded its
jurisdictional analysis as follows: 

 Thus, although section 21.012's requirements are mandatory, the trial
courts in these consolidated cases had jurisdiction over the condemnation
proceedings regardless of whether the condemnors satisfied the requirement
that the parties "are unable to agree on the damages." We therefore
disapprove of those court of appeals decisions that have held or suggested
that these statutory requirements are jurisdictional. 


Id. 

 In Loutzenhiser, the plaintiff failed to comply with the notice requirement in the
Texas Tort Claims Act prior to filing her medical malpractice suit against a state university
medical center. Loutzenhiser, 140 S.W.3d at 358. See also Tex. Civ. Prac. & Rem.
Code Ann. § 101.101(Vernon 1997). Although holding that lack of such notice to the
governmental unit is a "complete defense to suit," the Texas Supreme Court further held
that lack of such notice did not deprive the trial court of subject matter jurisdiction. 
Loutzenhiser, 140 S.W.3d at 354. The Court initially recognized Dubai's holding, and
then proceeded to determine the legislative intent of section 101.101's notice requirement. 
Id. at 358-61. The Court also recognized its prior holding in Essenburg v. Dallas County,
988 S.W.2d 188 (Tex. 1998), to the effect that a statute providing "a person may not sue
on a claim against a county unless the person has presented the claim to the
commissioners' court and the commissioners' court has neglected or refused to pay all or
part of the claim" was not jurisdictional, as this "presentment" requirement was intended
to promote settlement, not to define subject matter jurisdiction. Id. at 361 (citing
Essenburg, 988 S.W.2d at 189.). The Court in Loutzenhiser further noted that, in other
jurisdictions, when notice or limitations provisions pertaining to suits against the
government are considered jurisdictional, the statutory language is much clearer than
section 101.101. Loutzenhiser, 140 S.W.3d at 364 n.53 (Listing, as one of several
examples, a Colorado statutory provision which reads, "Compliance with the provisions
of this section shall be a jurisdictional prerequisite to any action brought under the
provisions of this article, and failure of compliance shall forever bar any such action.").

 In the instant case, neither relators nor real party in interest has cited Dubai or any
of its progeny. As we appreciate Dubai, it has provided an entirely different point of
judicial reference for determining whether certain types of litigation have invoked subject
matter jurisdiction in Texas trial courts. We recognize, as we must, that the County Court
at Law No. One of Brazos County, Texas, is designated by the Legislature as having
concurrent jurisdiction with the district court in family law cases. (2) Acting within its
authority as a family law court, the Brazos County Court had jurisdiction to rule on
Castro's bill of review (3) of the order terminating his parental rights. It was exercising
authority concurrent with the constitutional authority of a district court, notwithstanding
the existence of certain statutory requirements in section 161.211. See Dubai, 12 S.W.3d
at 76. Additionally, because a bill of review is a direct attack on a judgment, only the
court rendering the original judgment has jurisdiction over the proceeding. Richards v.
Commission for Lawyer Discipline, 81 S.W.3d 506, 508 (Tex. App.--Houston [1st Dist.]
2002, no pet.). "The requirement that a bill of review be filed in the same court that
rendered the judgment under attack is a matter of jurisdiction, not merely a matter of
venue." Id. We echo the Texas Supreme Court in saying that, although the requirements
of section 161.211 are mandatory, the trial court had jurisdiction over the bill of review
regardless of whether Castro satisfied the statutory six month limitations requirement. See
Hubenak, 141 S.W.3d at 183. Because we find the Brazos County Court had jurisdiction
to consider and rule on Castro's bill of review, the resulting order setting aside the prior
termination order was not void. Respondent did not abuse his discretion in either refusing
to reinstate the termination order or refusing to reinstate the adoption order. 

 The procedural aspect of the record before us differs to a significant extent from
that shown in both Hubenak and Loutzenhiser in that our relators, unlike the defendants
before the Texas Supreme Court, failed to raise an objection based upon section 161.211
to Castro's bill of review before the trial court in Brazos County. The consequence of this
was noted by the Court in Loutzenhiser when it stated that, while failure of a non-jurisdictional requirement mandated by statute may result in the loss of a claim, that failure
must be timely asserted or compliance can be waived. Loutzenhiser, 140 S.W.3d at 359. 
There appears to be nothing in the record before us that indicates the procedural
requirements in section 161.211 were brought to the attention of the trial court prior to its
granting of the bill of review. In In re T.R.R., 986 S.W.2d 31, 35 (Tex. App.--Corpus
Christi 1998, no pet), the Court was presented with the identical argument relators make
here. The Corpus Christi court overruled the contention for two reasons, one of which
was that the complaining party failed to raise the issue to the trial court at the bill of review
hearing. Id. The Corpus Christi Court treated it as simple waiver under Tex. R. App. P.
33.1. Id. In Queen v. Goeddertz, 48 S.W.3d 928, 929 n.1 (Tex. App.--Beaumont 2001,
no pet.), we were not presented directly with the issue but implicitly treated it as waived
and proceeded to address the substantive issue brought to us. Id. 

 Essentially, section 161.211's six month limitation on attacks on termination rulings
is an affirmative defense, which is a proposition a defendant may interpose to defeat a
plaintiff's prima facie case. See Cook Composites, Inc. v. Westlake Styrene Corp., 15
S.W.3d 124, 137 (Tex. App.--Houston [14th Dist.] 2000, pet. dism'd). An affirmative
defense does not rebut the factual propositions of the plaintiff's pleading, but, instead,
allows the defendant to introduce evidence to establish an independent reason why the
plaintiff should not prevail. See Gorman v. Life Ins. Co. of North America, 811 S.W.2d
542, 546 (Tex. 1991); Heggy v. American Trading Employee Retirement Account Plan,
123 S.W.3d 770, 778 (Tex. App.--Houston [14th Dist.] 2003, pet. denied). Our record
does not indicate what pleadings, if any, were filed by Carol in response to Castro's
petition for bill of review in Brazos County. However, relators do not contend the
limitations language of section 161.211 was presented to the Brazos County trial court. 
The defense of limitations does not bar a plaintiff from filing a lawsuit. See Matter of the
Marriage of Collins, 870 S.W.2d 682, 684 (Tex. App.--Amarillo 1994, writ denied). As
such, Carol was required to plead and present the affirmative defense of limitations, but
failed to do so. Coupled with our finding that section 161.211 is not a jurisdictional
prerequisite to suit, the procedural default by Carol at the Brazos County bill of review
hearing results in our concluding that the relators have failed to establish "that the facts
and law permit the trial court to make but one decision." In re University Interscholastic
League, 20 S.W.3d at 692. It was well within respondent's discretion to deny relators'
motion for reconsideration, and refuse to revive either the order terminating Castro's
parental rights or the order of adoption. Relators have not established their right to relief
by mandamus. We therefore deny relators' petition for writ of mandamus. 

 WRIT DENIED. 



 ____________________________

 STEVE MCKEITHEN

 Chief Justice 



Submitted on August 27, 2004

Opinion Delivered October 7, 2004


Before McKeithen, C.J., Burgess and Gaultney, JJ.
1. As the parties do not dispute the sequence of events set out in their various
pleadings in the instant mandamus action, we rely heavily on the pleadings and attachments
in piecing together our rendition of the salient background events. The record before us
contains no reporter's record from any of the Brazos County proceedings, and only
includes the reporter's record from the August 4, 2004, hearing in Jefferson County. Our
record is also very limited with regard to the petitions and motions filed by the parties in
any of the Brazos County or Jefferson County proceedings which resulted in the various
judgments and orders described. In many instances, we are not provided with a copy of
the judgment or order mentioned by a party, and in other instances we are provided with
orders appearing to be connected with ongoing litigation by Castro in his attempt to
establish legal access to C.A.T.B. As such, any background "fact" set out in this opinion
should not be construed as a conclusive finding of any fact for subsequent proceedings. 
 
2. See Tex. Gov't Code Ann. §§ 25.0231 & 25.0232 (Vernon 2004) (Brazos
County Court at Law No. One has concurrent jurisdiction with the district court in family
law cases and proceedings.).
3. Normally, the residual four-year statute of limitations applies to bills of review. 
Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (Vernon 1997); Caldwell v. Barnes, 975
S.W.2d 535, 538 (Tex. 1998). Castro's bill of review, filed on April 18, 2000, was filed
within four years of the rendition of the default judgment terminating his parental rights,
which was signed on September 21, 1998.