169 S.W.3d 677 (2005)
IN THE INTEREST OF N.P.T. AND S.E.T.
No. 05-04-00746-CV.
Court of Appeals of Texas, Dallas.
June 13, 2005.
Rehearing Overruled August 31, 2005.
*678 Todd W. White, The White Law Firm, Rockwall, for Appellant.
David E. Rohlf, Rockwall, for Appellee.
Before Justices WRIGHT, BRIDGES, and FITZGERALD.

OPINION
Opinion by Justice WRIGHT.
Appellant appeals the termination of his parental rights to N.P.T. and S.E.T. In three issues, appellant contends the trial court erred by terminating his parental rights because (1) mother's bankruptcy automatically stayed all proceedings; (2) his affidavit of relinquishment of parental rights was not voluntarily made; and (3) his due process rights were violated when he did not receive notice of the termination hearing. We overrule appellant's issues and affirm the trial court's judgment.

Factual and Procedural Background
While appellant's and mother's divorce was pending, appellant was tried for one count of possession of child pornography and two counts of indecency with a child. During that trial, he entered into plea bargain agreements in exchange for his *679 guilty pleas. As a condition of the plea bargain agreements, appellant executed an affidavit of relinquishment of his parental rights to N.P.T. and S.E.T. Mother subsequently amended her divorce petition seeking to terminate appellant's parental rights pursuant to the affidavit of relinquishment. A few days later, mother filed a petition for bankruptcy. The same day, the trial court granted her motion for severance on the termination issue. Three days later, the trial court granted mother's motion to terminate. This appeal followed.

Discussion
In his first issue, appellant contends the termination proceeding was automatically stayed when mother filed her petition for bankruptcy and, thus, any actions (including the severance order and subsequent termination proceeding) taken after that time are void. We disagree. When a defendant files a bankruptcy petition, an automatic stay goes into effect and abates any judicial proceeding against that party. See 11 U.S.C. 362(a) (West 2004); In re S.W. Bell Tel. Co., 35 S.W.3d 602, 604 (Tex.2000). The purpose of the stay is twofold. First, it provides protection by giving the debtor a "breathing spell" from creditors and granting time to repay or reorganize. Second, the stay protects the creditor. Bamburg v. Townsend, 35 S.W.3d 85, 89 (Tex.App.-Texarkana 2000, no pet.). Therefore, the stay generally operates against only the debtor, and does not operate against non-debtors or even co-debtors, co-tortfeasors, or co-defendants. See S.W. Bell, 35 S.W.3d at 604; Bamburg, 35 S.W.3d at 89.
Here, mother filed for bankruptcy, thereby staying all judicial proceedings against her. Appellant has not shown how proceeding with the termination of his parental rights in any way violates the purposes of the stay, or how any of the exceptions to the general rule that the stay operates against only the debtor apply. See generally Bamburg, 35 S.W.3d at 89-90 (discussing exceptions to this general rule). Thus, we cannot conclude the automatic stay affected the termination proceeding against appellant. We overrule appellant's first issue.
In his second issue, appellant contends he involuntarily executed the affidavit of relinquishment of parental rights. After reviewing the record, we cannot agree.
Traditionally, once an affidavit has been shown to comply with the requirements of section 161.103(b) of the Texas Family Code, courts of appeals have reviewed challenges to the voluntariness of an affidavit of relinquishment to determine if the party challenging the affidavit established, by a preponderance of the evidence, that the affidavit was executed as a result of fraud, duress, or coercion. See, e.g., In re D.R.L.M., 84 S.W.3d 281, 296-298 (Tex.App.-Fort Worth 2002, pet. denied); Vela v. Marywood, 17 S.W.3d 750, 759 (Tex.App.-Austin 2000), pet. denied, 53 S.W.3d 684 (Tex.2001); Coleman v. Smallwood, 800 S.W.2d 353, 356 (Tex.App.-El Paso 1990, no writ). Recently, in In re L.M.I., 119 S.W.3d 707 (Tex.2003), cert. denied, 541 U.S. 1043, 124 S.Ct. 2175, 158 L.Ed.2d 733 (2004) three justices, in concurring and dissenting opinions, suggested that placing the burden on the parents to set aside the affidavit "may run afoul of constitutional and statutory mandates for the burden of proof and quantum of evidence necessary to terminate parental rights" and the standard of review when the basis for termination is an affidavit of relinquishment should be to look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the affidavit of relinquishment *680 was executed voluntarily. See id. at 715-16 (Wainwright, J., concurring); id. at 716 (Owen, J., concurring and dissenting); id. at 739 (Hecht, J., dissenting). While there is considerable merit in applying the standard of review suggested in the concurring and dissenting opinions in L.M.I., we need not expressly decide that issue today because under either standard, the result remains the samethe evidence supports the trial court's determination that appellant voluntarily executed the affidavit. Thus, should it decide to do so, we leave for the supreme court the task of reformulating the standard of review in these cases.
At the motion for new trial hearing, Brian Blessing testified that he, along with co-counsel, represented appellant in his criminal trial. A jury had been seated, and the State was in the process of introducing certain documents in the child pornography case. During a break in the trial, appellant initiated plea negotiations with the State. The State made an offer that appellant accepted. However, after speaking with the children's mother, the State added the requirement that appellant relinquish his parental rights to the children. Although the break was scheduled to be for fifteen minutes, the trial judge was "lenient in extending that period of time, ... but ... it was a compressed and packed pressure-type situation." Blessing thought appellant had at least forty-five minutes, and it could have taken longer than an hour to decide about the plea agreement. After the affidavit was prepared, appellant had "about 15 minutes" to decide whether to execute the affidavit. During the plea negotiations, appellant had the assistance of two attorneys, his sister, and Blessing's legal assistant. Counsel advised appellant that his motion to suppress would likely not be granted and he was "looking at a great deal" of penitentiary time.
On cross-examination, Blessing admitted that he read, along with appellant, the affidavit. As he read through the affidavit, appellant made handwritten changes, including a change of address, and added that appellant wanted to be mailed or given a copy and wanted to be notified of the signing of a judgment. After signing the affidavit, appellant and counsel went into the judge's chambers where the judge looked at the documents and asked appellant if he understood what he had signed. According to Blessing, he advised appellant to execute the affidavit because he "felt the plea offer was going to save his life, freedom."
Appellant testified that he did not sign the affidavit voluntarily because he was "rushed" and at the time he was trying to consider the document, "the courtroom was just a boilermaker." After being advised by his attorney, appellant felt his choices were either to "sign the thing or go to prison." At the time he signed the document, he had been in trial for two days, and things were not "going [his] way." On cross-examination, appellant admitted he reads and writes the English language and that he read the document and swore it was being executed voluntarily. After reviewing the document, appellant made changes to the affidavit. He also admitted that, at the time he signed the document, the guilt/innocence portion of his trial was not completed and he could have chosen to continue with the jury trial. According to appellant, he voluntarily entered into the plea agreement but contends he "was not of sound mind" with respect to the affidavit of relinquishment.
Janna R. testified that her son was the complaining witness in one of the indecency with a child cases. According to Janna R., she and mother were presented with a plea agreement the night before appellant signed the affidavit. They initially agreed, *681 but the next morning, both she and the children's mother decided the trial should continue because appellant should "pay for what he did." Janna R. and mother thought the children should testify and "have everything over and done with so [mother] and her children could leave and get on with their lives." The prosecutor then inquired about Janna R. and mother agreeing with the plea bargain if appellant relinquished his parental rights. Both Janna R. and mother then agreed to the plea bargain. Later that morning, Janna R. spoke with appellant who told her he "loved his kids and that he gave them up because he didn't want them to have to testify against him ... [and] because he did not want to go to jail."
Although appellant contends that mother "seemingly used the criminal prosecution to gain the ultimate leverage in her divorce proceeding and obtained [appellant's] signature on the affidavit of relinquishment at, for all intents and purposes, the point of a gun," we cannot agree. The record shows that the affidavit of relinquishment was the prosecutor's solution to resolve mother's concerns about the plea bargain agreement. We recognize appellant may have been under pressure to make a decision; however, the record also shows he was represented by counsel, was well aware of the document he was signing, and understood its consequences. Contrary to appellant's suggestion, being faced with an unfavorable jury decision does not automatically warrant a finding that the affidavit of relinquishment was wrongfully procured. See Mosley v. Dallas County Child Protective Servs. Unit of the Tex. Dep't of Protective and Regulatory Serv., 110 S.W.3d 658, 664 (Tex.App.-Dallas 2003, pet. denied). Nor can we conclude that because a trial court is not bound to accept the terms of a plea bargain agreement, the affidavit must be found involuntary because it was given in exchange for an "empty promise" such as in Queen v. Goeddertz, 48 S.W.3d 928, 932 (Tex.App.-Beaumont 2001, no pet.), or Vela, 17 S.W.3d at 759. In those cases, the affidavits of relinquishment were secured without the advice of counsel and in exchange for promises of a continuing relationship with the child. See Queen, 48 S.W.3d at 931; Vela, 17 S.W.3d at 760. Here, there was no such promise. That the trial judge was not bound to accept the terms of the plea bargain agreement is not the same as a promise that is, on its face, unenforceable. Once the trial court accepted the terms of the plea bargain, the terms of appellant's plea bargain became enforceable. See Ortiz v. State, 933 S.W.2d 102, 105 (Tex.Crim.App.1996) (plea agreement is binding, contractual arrangement once all necessary parties agree to terms). In contrast, the promises at issue in Queen and Vela were unenforceable as a matter of law. See Queen, 48 S.W.3d at 932; Vela, 17 S.W.3d at 762. In making this determination, we are not holding that an affidavit of relinquishment procured in exchange for a plea bargain could never be found to have been the result of duress or coercion. However, under the particular facts and circumstances in this case, we cannot conclude the affidavit in this case was wrongfully procured or that appellant did not understand the terms and consequences of the affidavit. Thus, we conclude appellant knowingly and voluntarily executed the affidavit of relinquishment. We overrule appellant's second issue. Because appellant's third issue is premised on a finding that the waiver of his right to notice in the affidavit of relinquishment cannot be enforced because it was involuntarily executed, we likewise overrule appellant's third issue.
Accordingly, we affirm the trial court's judgment.