# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00716-CV

**Hydi Wall, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. FM307244, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

On August 25, 2005, this Court issued an opinion abating Hydi Wall's appeal from a judgment terminating the parent-child relationship with her children W.C.C. and T.C. because the district court failed to hold a mandatory hearing on Wall's motion for new trial. *See Wall v. Texas Dep't of Family & Protective Servs.*, 173 S.W.3d 178,183-84 (Tex. App.—Austin 2005, no pet.). In that opinion we overruled all of Wall's other issues but permitted her to file supplemental briefing regarding any issues relating to the hearing on her motion for new trial. *See id*. at 183. Pursuant to our direction, the district court held a hearing on Wall's motion for new trial, and Wall now raises two issues in a supplemental brief. Wall contends that the statute governing the voluntary

relinquishment of parental rights to the Department is unconstitutional and that the district court abused its discretion in denying her motion for new trial. Because Wall failed to establish that the relinquishment of her parental rights was involuntary and because she has waived her constitutional arguments, we affirm the judgment of the district court severing the parent-child relationship with W.C.C. and T.C.

**Constitutional Challenge**

In her first issue, Wall contends that section 161.103(e) of the family code is unconstitutional. Section 161.103(e) states that the relinquishment of parental rights in an affidavit that designates the Department as managing conservator is irrevocable. Tex. Fam. Code Ann. § 161.103(e) (West Supp. 2005). Under this statute, a relinquishment in any other affidavit is generally revocable and may provide that it is irrevocable only for a stated period of no more than sixty days. *Id.* Wall contends that this statutory provision is inconsistent with the constitutionally recognized bond between parent and child. *See Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). However, Wall did not raise this constitutional issue in the district court or in her prior appellate brief. Generally, a party may not raise an issue, even a constitutional claim, for the first time on appeal. *Carrizales v. Texas Dep't of Protective & Regulatory Servs.*, 5 S.W.3d 922, 925 (Tex. App.—Austin 1999, pet. denied); *see also In re L.M.I.*, 119 S.W.3d 707, 710-11 (Tex. 2003) (due process claim in parental rights termination waived when raised for the first time on appeal). Because Wall raised her constitutional claim for first time in her supplemental appellate brief, she has waived this issue.

**Voluntariness of Relinquishment**

In her second issue, Wall contends that she established by a preponderance of the evidence that her affidavit of relinquishment was executed as a result of coercion, fraud, deception, undue influence or overreaching and, therefore, the district court erred by overruling her motion for new trial. *See Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.—Austin 2000, pet. denied) (involuntarily executed affidavit complete defense to termination based on that affidavit); *Neal v. Texas Dep't of Human Servs.*, 814 S.W.2d 216, 219 (Tex. App.—San Antonio 1991, writ denied). Specifically, Wall points to evidence that (1) her attorney had been only recently appointed and (2) she was told she could not win at trial and that her pregnancy would be used against her. The record shows that Wall was also told that an involuntary termination of the parent-child relationship with W.C.C. and T.C. would be grounds on which the Department could terminate the parent-child relationship with her unborn child. *See* Tex. Fam. Code Ann. § 161.001(1)(M) (West Supp. 2005).

When the Department seeks to terminate the parent-child relationship on the basis of an irrevocable affidavit of relinquishment, it must establish by clear and convincing evidence that the affidavit was executed according to the terms of section 161.103 of the family code. *Vela*, 17 S.W.3d at 758. Once this showing has been made by the Department, the affidavit may be set aside only upon proof by the parent, by a preponderance of the evidence, that the affidavit was executed as a result of coercion, duress, fraud, deception, or undue influence. *Id*.; *see also Brown v. McLennan County Children's Protective Servs.*, 627 S.W.2d 390, 394 (Tex. 1982).

Wall relies primarily on her own testimony at the hearing on the motion for new trial. At that hearing, she testified about the events of the mediation at which she signed the affidavit of

3

relinquishment. She explained that she was eight months pregnant at the time and that she was fatigued, hungry and feeling sick by the time she signed the affidavit. She testified that she signed the affidavit because she had been told that she would lose if she went to trial and that, if she relinquished her rights to W.C.C. and T.C., the Department "would be out of my life and they would have . . . no reason whatsoever to come into my life with my youngest." Further, she testified that the Department promised to place W.C.C. and T.C. with one of two persons that she had named as possible adoptive placements. Wall testified that she did not really understand the documents that she signed but signed them because "I was tired and I wanted to hurry up and go to the house." Later that evening, she contacted her attorney and expressed her desire to revoke the relinquishment of her parental rights. The following day, Wall signed affidavits attempting to revoke the relinquishment of her parental rights and the rule 11 agreement.

The Department established at the hearing on the motion for new trial that Wall was represented by an attorney throughout the mediation. For several hours Wall was being advised by two attorneys.[1] Participants in the mediation testified that Wall appeared healthy. Child Protective Services Supervisor Anna Warde testified that Wall seemed "clear headed . . . . [I]t seemed like her focus was on her new unborn child . . . like she was trying to move on with her life." The Department's witnesses denied making any promises to Wall that were not reflected in the rule 11 agreement. Specifically, they denied telling Wall that the Department would not become involved with her unborn child. Mediator Paula James testified that she likely told Wall that an involuntary

---

[1] Attorney John Hindera testified that he participated in the mediation for several hours and that he advised Wall not to sign the affidavit of relinquishment.

termination of rights to W.C.C. and T.C. could be statutory grounds to terminate the parent-child relationship with Wall's unborn child; James denied that Wall was told that "the department would definitely take away her newborn baby once it was born."

There was also a dispute as to whether the Department had fulfilled the promises made in the rule 11 agreement signed by the parties. Pursuant to the agreement, Wall signed the irrevocable affidavit of relinquishment in exchange for promises by the Department to allow Wall to continue visitation with the children and to place W.C.C. and T.C. with persons named by Wall if those persons were found qualified by the Department's home study. Wall alleged that the promised visitation did not occur and that the Department did not investigate persons she identified as potential adoptive parents. However, witnesses attributed the lack of visitation to scheduling problems. Furthermore, it appears from the record that Wall never submitted any names of potential adoptive parents to the Department in accordance with the agreement.[2]

On this record, giving appropriate deference to the trier of fact, we hold that Wall failed to establish by a preponderance of the evidence that her relinquishment of parental rights was obtained through coercion, duress, fraud, deception, or undue influence. Her testimony regarding promises made by the Department was directly contradicted by other witnesses. Importantly, Wall was represented by counsel at the time she signed the affidavit of relinquishment. The district court explained:

---

[2] Testimony at the hearing reflects that Wall provided the mediator with the names of two persons who were contacted during the mediation. However, these names were never forwarded to the Department by the mediator or Wall's counsel.

I did some research over the break also, and one of the things that seems important . . . is whether or not the parent signing the relinquishment was represented by an attorney. So it begs the question, since she was—Ms. Wall was in fact represented by an attorney the entire time, it's hard to imagine a coercive situation when she has one and at times during the mediation two lawyers present for counsel, and advice, and protection from such undue influences as you allege occurred in this case.

Indeed, courts routinely reject claims that a relinquishment of parental rights was involuntary when the party was represented by an attorney at the time the affidavit was signed. *See In re N.P.T.*, 169 S.W.3d 677, 681 (Tex. App.—Dallas 2005, pet. denied); *In re D.R.L.M.*, 84 S.W.3d 281, 298-99 (Tex. App.—Fort Worth 2002, pet. denied); *Lumbis v. Texas Dep't of Protective & Regulatory Servs.*, 65 S.W.3d 844, 850 (Tex. App.—Austin 2002, pet. denied); *Heiser v. Texas Dep't of Protective & Regulatory Servs.*, No. 03-03-00098-CV, 2002 Tex. App. LEXIS 7018, *11-*14 (Tex. App.—Austin 2002, no pet.) (mem. op.). Moreover, Wall has not challenged the effectiveness of counsel in protecting her interests at the mediation.

There can be no doubt that a mediation in which a parent is asked to sign an affidavit forever terminating her relationship with her children is an extremely stressful event. This was exacerbated by the fact that Wall was faced with the unsavory dilemma of choosing between voluntarily relinquishing her rights to W.C.C. and T.C., and risking trial and the establishment of new grounds to terminate the parent-child relationship with her unborn child. *See* Tex. Fam. Code Ann. § 161.001(1)(M). But these are inherent pressures in the process and do not alone establish that Wall's actions were involuntary. *See In re N.P.T.*, 169 S.W.3d at 681 ("being faced with an unfavorable jury decision does not *automatically* warrant a finding that the affidavit of relinquishment was wrongfully procured."). Wall was represented by counsel and arrived at a

bargained-for agreement with the Department. The voluntariness of Wall's assent to the agreement is also not implicated by scheduling problems in visitation or Wall's failure to take advantage of the agreement by providing names of potential adoptive parents to the Department. Accordingly, we hold that Wall failed to establish by a preponderance of the evidence that she did not voluntarily execute her affidavit of relinquishment. We overrule Wall's second issue.

Having overruled both of Wall's issues, we affirm the district court's order overruling Wall's motion for new trial and the judgment terminating the parent-child relationship with W.C.C. and T.C.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: June 2, 2006