TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-04-00716-CV






Hydi Wall, Appellant



v.



Texas Department of Family and Protective Services, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT

NO. FM307244, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 On August 25, 2005, this Court issued an opinion abating Hydi Wall's appeal from
a judgment terminating the parent-child relationship with her children W.C.C. and T.C. because the
district court failed to hold a mandatory hearing on Wall's motion for new trial. See Wall v. Texas
Dep't of Family & Protective Servs., 173 S.W.3d 178,183-84 (Tex. App.--Austin 2005, no pet.). 
In that opinion we overruled all of Wall's other issues but permitted her to file supplemental briefing
regarding any issues relating to the hearing on her motion for new trial. See id. at 183. Pursuant to
our direction, the district court held a hearing on Wall's motion for new trial, and Wall now raises
two issues in a supplemental brief. Wall contends that the statute governing the voluntary
relinquishment of parental rights to the Department is unconstitutional and that the district court
abused its discretion in denying her motion for new trial. Because Wall failed to establish that the
relinquishment of her parental rights was involuntary and because she has waived her constitutional
arguments, we affirm the judgment of the district court severing the parent-child relationship with
W.C.C. and T.C.


Constitutional Challenge

 In her first issue, Wall contends that section 161.103(e) of the family code is
unconstitutional. Section 161.103(e) states that the relinquishment of parental rights in an affidavit
that designates the Department as managing conservator is irrevocable. Tex. Fam. Code Ann.
§ 161.103(e) (West Supp. 2005). Under this statute, a relinquishment in any other affidavit is
generally revokable and may provide that it is irrevocable only for a stated period of no more than
sixty days. Id. Wall contends that this statutory provision is inconsistent with the constitutionally
recognized bond between parent and child. See Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). 
However, Wall did not raise this constitutional issue in the district court or in her prior appellate
brief. Generally, a party may not raise an issue, even a constitutional claim, for the first time on
appeal. Carrizales v. Texas Dep't of Protective & Regulatory Servs., 5 S.W.3d 922, 925 (Tex.
App.--Austin 1999, pet. denied); see also In re L.M.I., 119 S.W.3d 707, 710-11 (Tex. 2003) (due
process claim in parental rights termination waived when raised for the first time on appeal). 
Because Wall raised her constitutional claim for first time in her supplemental appellate brief, she
has waived this issue. 

Voluntariness of Relinquishment

 In her second issue, Wall contends that she established by a preponderance of the
evidence that her affidavit of relinquishment was executed as a result of coercion, fraud, deception,
undue influence or overreaching and, therefore, the district court erred by overruling her motion for
new trial. See Vela v. Marywood, 17 S.W.3d 750, 759 (Tex. App.--Austin 2000, pet. denied)
(involuntarily executed affidavit complete defense to termination based on that affidavit); Neal v.
Texas Dep't of Human Servs., 814 S.W.2d 216, 219 (Tex. App.--San Antonio 1991, writ denied). 
Specifically, Wall points to evidence that (1) her attorney had been only recently appointed and (2)
she was told she could not win at trial and that her pregnancy would be used against her. The record
shows that Wall was also told that an involuntary termination of the parent-child relationship with
W.C.C. and T.C. would be grounds on which the Department could terminate the parent-child
relationship with her unborn child. See Tex. Fam. Code Ann. § 161.001(1)(M) (West Supp. 2005). 
 When the Department seeks to terminate the parent-child relationship on the basis
of an irrevocable affidavit of relinquishment, it must establish by clear and convincing evidence that
the affidavit was executed according to the terms of section 161.103 of the family code. Vela, 17
S.W.3d at 758. Once this showing has been made by the Department, the affidavit may be set aside
only upon proof by the parent, by a preponderance of the evidence, that the affidavit was executed
as a result of coercion, duress, fraud, deception, or undue influence. Id.; see also Brown v.
McLennan County Children's Protective Servs., 627 S.W.2d 390, 394 (Tex. 1982). 

 Wall relies primarily on her own testimony at the hearing on the motion for new trial. 
At that hearing, she testified about the events of the mediation at which she signed the affidavit of
relinquishment. She explained that she was eight months pregnant at the time and that she was
fatigued, hungry and feeling sick by the time she signed the affidavit. She testified that she signed
the affidavit because she had been told that she would lose if she went to trial and that, if she
relinquished her rights to W.C.C. and T.C., the Department "would be out of my life and they would
have . . . no reason whatsoever to come into my life with my youngest." Further, she testified that
the Department promised to place W.C.C. and T.C. with one of two persons that she had named as
possible adoptive placements. Wall testified that she did not really understand the documents that
she signed but signed them because "I was tired and I wanted to hurry up and go to the house." Later
that evening, she contacted her attorney and expressed her desire to revoke the relinquishment of her
parental rights. The following day, Wall signed affidavits attempting to revoke the relinquishment
of her parental rights and the rule 11 agreement. 

 The Department established at the hearing on the motion for new trial that Wall was
represented by an attorney throughout the mediation. For several hours Wall was being advised by
two attorneys. (1) Participants in the mediation testified that Wall appeared healthy. Child Protective
Services Supervisor Anna Warde testified that Wall seemed "clear headed . . . . [I]t seemed like her
focus was on her new unborn child . . . like she was trying to move on with her life." The
Department's witnesses denied making any promises to Wall that were not reflected in the rule 11
agreement. Specifically, they denied telling Wall that the Department would not become involved
with her unborn child. Mediator Paula James testified that she likely told Wall that an involuntary
termination of rights to W.C.C. and T.C. could be statutory grounds to terminate the parent-child
relationship with Wall's unborn child; James denied that Wall was told that "the department would
definitely take away her newborn baby once it was born." 

 There was also a dispute as to whether the Department had fulfilled the promises
made in the rule 11 agreement signed by the parties. Pursuant to the agreement, Wall signed the
irrevocable affidavit of relinquishment in exchange for promises by the Department to allow Wall
to continue visitation with the children and to place W.C.C. and T.C. with persons named by Wall
if those persons were found qualified by the Department's home study. Wall alleged that the
promised visitation did not occur and that the Department did not investigate persons she identified
as potential adoptive parents. However, witnesses attributed the lack of visitation to scheduling
problems. Furthermore, it appears from the record that Wall never submitted any names of potential
adoptive parents to the Department in accordance with the agreement. (2) 

 On this record, giving appropriate deference to the trier of fact, we hold that Wall
failed to establish by a preponderance of the evidence that her relinquishment of parental rights was
obtained through coercion, duress, fraud, deception, or undue influence. Her testimony regarding
promises made by the Department was directly contradicted by other witnesses. Importantly, Wall
was represented by counsel at the time she signed the affidavit of relinquishment. The district court
explained:

I did some research over the break also, and one of the things that seems important
. . . is whether or not the parent signing the relinquishment was represented by an
attorney. So it begs the question, since she was--Ms. Wall was in fact represented
by an attorney the entire time, it's hard to imagine a coercive situation when she has
one and at times during the mediation two lawyers present for counsel, and advice,
and protection from such undue influences as you allege occurred in this case.



Indeed, courts routinely reject claims that a relinquishment of parental rights was involuntary when
the party was represented by an attorney at the time the affidavit was signed. See In re N.P.T., 169
S.W.3d 677, 681 (Tex. App.--Dallas 2005, pet. denied); In re D.R.L.M., 84 S.W.3d 281, 298-99
(Tex. App.--Fort Worth 2002, pet. denied); Lumbis v. Texas Dep't of Protective & Regulatory
Servs., 65 S.W.3d 844, 850 (Tex. App.--Austin 2002, pet. denied); Heiser v. Texas Dep't of
Protective & Regulatory Servs., No. 03-03-00098-CV, 2002 Tex. App. LEXIS 7018, *11-*14 (Tex.
App.--Austin 2002, no pet.) (mem. op.). Moreover, Wall has not challenged the effectiveness of
counsel in protecting her interests at the mediation. 

 There can be no doubt that a mediation in which a parent is asked to sign an affidavit
forever terminating her relationship with her children is an extremely stressful event. This was
exacerbated by the fact that Wall was faced with the unsavory dilemma of choosing between
voluntarily relinquishing her rights to W.C.C. and T.C., and risking trial and the establishment of
new grounds to terminate the parent-child relationship with her unborn child. See Tex. Fam. Code
Ann. § 161.001(1)(M). But these are inherent pressures in the process and do not alone establish that
Wall's actions were involuntary. See In re N.P.T., 169 S.W.3d at 681 ("being faced with an
unfavorable jury decision does not automatically warrant a finding that the affidavit of
relinquishment was wrongfully procured."). Wall was represented by counsel and arrived at a
bargained-for agreement with the Department. The voluntariness of Wall's assent to the agreement
is also not implicated by scheduling problems in visitation or Wall's failure to take advantage of the
agreement by providing names of potential adoptive parents to the Department. Accordingly, we
hold that Wall failed to establish by a preponderance of the evidence that she did not voluntarily
execute her affidavit of relinquishment. We overrule Wall's second issue.

 Having overruled both of Wall's issues, we affirm the district court's order overruling
Wall's motion for new trial and the judgment terminating the parent-child relationship with W.C.C.
and T.C. 



 

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: June 2, 2006
1. Attorney John Hindera testified that he participated in the mediation for several hours and
that he advised Wall not to sign the affidavit of relinquishment.
2. Testimony at the hearing reflects that Wall provided the mediator with the names of two
persons who were contacted during the mediation. However, these names were never forwarded to
the Department by the mediator or Wall's counsel.