

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-11-00228-CV

## IN THE INTEREST OF C.L., A CHILD

_____

**From the 220th District Court
Bosque County, Texas
Trial Court No. 10-06-19610-BCFM**

## MEMORANDUM OPINION

Jacob R. appeals from a judgment terminating his parental rights based on an irrevocable affidavit of relinquishment of parental rights.  TEX. FAM. CODE ANN. § 161.103 (West 2011).  Jacob complains that the evidence was legally and factually insufficient for the trial court to have found that the affidavit was voluntary and that he received ineffective assistance of counsel.  Because we find no error, we affirm the judgment of the trial court.

### Procedural History

Jacob's child was removed from his mother's care by the Department of Family and Protective Services due to abuse and neglect.  Jacob was in prison at the time of removal and throughout the case.  Jacob was bench warranted from prison to attend a

permanency hearing approximately two weeks before a jury trial on the issue of termination of parental rights. That day, Jacob was given several hours to consider whether he wanted to sign an affidavit of relinquishment of his parental rights or to have a jury decide on termination. During that time, he met with his mother, the mother of his child, and the proposed adoptive father as well as his attorney and ultimately decided to sign the affidavit in exchange for the adoptive parents agreeing to send Jacob semi-annual photos and updates on the child. The jury trial that was scheduled for approximately two weeks later was subsequently waived by Jacob and his attorney with the agreement of all of the parties. At the final hearing, Jacob's attorney announced that Jacob wanted to withdraw his affidavit and proceed to trial at a later date. A hearing was conducted at which Jacob testified. After hearing Jacob's testimony, the trial court denied Jacob's request to withdraw his affidavit and terminated his rights based on the affidavit.

Jacob's trial attorney withdrew and his appellate counsel timely filed his statement of points and a motion for new trial alleging legal and factual insufficiency as to the voluntariness of the affidavit of relinquishment and ineffective assistance of counsel. After a hearing at which Jacob's trial counsel testified, the trial court denied his motion for new trial but found that Jacob's points of error were not frivolous.

*Voluntariness of Affidavit of Relinquishment*

In his first and second issues, Jacob complains that the evidence was legally and factually insufficient for the trial court to have determined that his affidavit of relinquishment of parental rights was executed voluntarily. He further contends that the current standards set forth in the family code for challenging an affidavit should not be followed. *See* TEX. FAM. CODE ANN. § 161.211(c) (West 2011). This process places the burden for establishing that an affidavit was not voluntarily executed on the relinquishing parent if the affidavit was properly executed. Rather, Jacob contends that due process requires that the burden of proof to establish the voluntariness of the affidavit should remain with the proponent of the affidavit, which in this case is the Department.

In support of this contention, Jacob relies on a dissenting opinion from a Justice on the Texas Supreme Court that argues that because the termination of parental rights is of constitutional dimension that due process requires that the proponent of an affidavit of relinquishment should bear the burden of establishing that it was indeed voluntary. *See In re L.M.I.*, 119 S.W.3d 707, 716 (Tex. 2003) (Owen, J., concurring and dissenting). Jacob further contends that at least two courts of appeals have concluded that the standard set forth in that dissent regarding a different standard has merit although neither court adopted that standard because the result would have been the same under either standard. *See In re R.B.*, 225 S.W.3d 798, 805 (Tex. App.—Fort Worth

2007, no pet.); *In re N.P.T.*, 169 S.W.3d 677, 680 (Tex. App.—Dallas 2005, pet. denied). However, we note that since those opinions were issued the Fort Worth Court of Appeals sitting *en banc* has expressly declined altering the standard based on the dissent in *L.M.I.   See In re D.E.H.*, 301 S.W.3d 825, 830 n.4 (Tex. App.—Fort Worth 2009, pet. denied).  We also decline to alter the existing standards and burdens of proof as Jacob suggests.

### Standard of Review to Attack an Affidavit of Relinquishment

An involuntarily executed affidavit is a complete defense to a termination decree. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.—Austin 2000, pet. denied).  Because an affidavit of relinquishment waives a constitutional right, it must be made voluntarily, knowingly, intelligently, and with full awareness of its legal consequences.  *Id*.  Initially, the proponent of the affidavit has the burden to establish by clear and convincing evidence that the affidavit was executed according to the terms of section 161.103 of the Family Code.  TEX. FAM. CODE ANN. § 161.103 (West 2008); *Vela*, 17 S.W.3d at 758.  Once the proponent has met that burden, the burden then shifts to the affiant to establish by a preponderance of the evidence that the affidavit was involuntarily executed as a result of fraud, duress, or coercion.  *Monroe v. Alternatives in Motion*, 234 S.W.3d 56, 62 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Vela*, 17 S.W.3d at 758; *see also* TEX. FAM. CODE ANN. § 161.211(c) (West 2008) (stating that attack of termination order "based on an

unrevoked affidavit of relinquishment of parental rights . . . is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit").

Jacob does not argue that the affidavit was not executed substantially in accordance with the terms of the Family Code, and agrees that under the current standard, the burden then shifted to him to prove by a preponderance of the evidence that the affidavit was not voluntarily signed because of issues relating to fraud, duress, or coercion in the execution of the affidavit. *See* TEX. FAM. CODE ANN. § 161.211(c) (West 2008). We agree that the Department met its burden to establish that the affidavit was executed in accordance with section 161.103. Therefore, we will address Jacob's sufficiency issues based on the burden that was shifted to Jacob.

*Legal and Factual Sufficiency*

In a legal sufficiency review of a finding terminating parental rights, we review all of the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In a factual sufficiency review of a finding terminating parental rights, our inquiry is whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *Id*.

However, because the issue before us is not based on the clear and convincing standard for terminations, but rather a preponderance of the evidence, we will use the

standards for that burden of proof. In reviewing the legal sufficiency of the evidence supporting the voluntariness of Jacob's affidavit, we first examine the record for evidence that supports the finding of voluntariness while ignoring all evidence to the contrary. *See Vela*, 17 S.W.3d at 759. Next, if there is no evidence to support the finding, then we examine the entire record to see if the involuntariness of Jacob's affidavit was established as a matter of law. *See id.*

Our factual sufficiency review considers all of the evidence, both supporting and contrary to the fact at issue. *Plas-Tex, Inc. v U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). Because Jacob bore the burden of proof on the issue of involuntariness, we will only reverse if we find that the finding of voluntariness is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In order to reverse on a factual sufficiency point, we must be convinced that the finding of voluntariness was clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

At the beginning of the final hearing, it was made known for the first time that Jacob wanted to withdraw his affidavit of relinquishment. The trial court allowed Jacob to testify regarding the reasons for wanting to withdraw the affidavit. Jacob testified that he had not taken his prescribed medications of Zoloft and Tegretol for two days prior to the execution of the affidavit, he was not thinking clearly that day, and felt pressured to sign the affidavit by the child's mother and his past, which included his

current incarceration. Further, he indicated that he had changed his mind because the adoptive parents had made an agreement with the mother for visitation if certain conditions were met, which he had just found out about and did not agree with. He did not attempt to tell anyone, including his family that visited him in the jail or his attorney, that he had changed his mind until the day of the final hearing. This was also the first time that Jacob's attorney was told of his lack of medication.

Offered into evidence was a letter dated the same day of the final hearing which Jacob had written and given to the adoptive parents, which stated that Jacob hoped that they would give his son "the best life that yall (sic) can." He further stated that if his son asked about him when he is older to let the child know that he did what was best for him. At the end he asked them to take birthday pictures.

On appeal, Jacob's primary contention is that his affidavit was involuntary because he had not taken his medications for the two days prior to its execution and therefore, was not thinking clearly. However, as of the date of the final hearing two weeks later, Jacob still was not taking his medication and admitted that he was thinking more clearly the day that he executed the affidavit than he was at the time of the final hearing. There was no testimony regarding the effects of Jacob not taking his medication or in what way he was affected beyond not thinking clearly that was any different from the day of the execution of the affidavit and the day of the final hearing. Jacob does not argue that the affidavit was involuntary because of fraud, duress, or

coercion and acknowledges the difficulty of him establishing as a matter of law that the affidavit was involuntary if the burden shifted to him pursuant to the statutory scheme set forth in section 161.211(c). *See* TEX. FAM. CODE ANN. § 161.211(c) (West 2011).

We find that, using the appropriate standards and considering all of the evidence[1] that Jacob failed to meet his burden that the affidavit was executed involuntarily. While Jacob testified that he felt pressured to sign the affidavit, there was no testimony regarding overreaching or fraud, and nothing to rise to the level of coercion. Indeed, it appears that Jacob was bothered by the fact that the mother of the child was to have greater contact than he was and so he changed his mind the day of the hearing rather than having involuntarily executed the affidavit two weeks prior. We find that the evidence was legally and factually sufficient for the trial court to have found that the affidavits were executed voluntarily. We overrule issues one and two.

### *Ineffective Assistance of Counsel*

Jacob complains in his third issue that he received ineffective assistance of counsel because his trial counsel failed to inquire into his mental health history and how that might have hindered his ability to voluntarily execute the affidavit of relinquishment. He raised this issue in his motion for new trial, and his trial counsel testified at that hearing.

---

[1] Jacob contended that our review of the sufficiency of the evidence should be restricted to the testimony from the final hearing and the affidavit of relinquishment itself. Although the hearing on the day the affidavit was executed and the motion for new trial are before us, we have considered only the final hearing transcript and the exhibits from that hearing as those are sufficient for us to dispose of Jacob's sufficiency issues.

In analyzing the effectiveness of counsel in a parental-rights termination case, we follow the two-pronged standard set forth by the United States Supreme Court in *Strickland v. Washington* to determine whether an attorney's representation was so inadequate to violate the right to effective assistance of counsel. *In the Interest of M.S.*, 115 S.W.3d 534, 545 (Tex. 2003) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984)). To show ineffective assistance of counsel in a termination case, the appellant must show (1) that counsel's assistance fell below an objective standard of reasonableness and (2) that counsel's deficient assistance, if any, prejudiced the parent. *Id*. (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). To show prejudice, the appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In this context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

Additionally, we do not review these claims of trial error in a vacuum. Rather, we must examine the entire record in order to determine whether the error caused an improper judgment. *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069 (in determining whether prejudice resulted from the deficient performance of counsel, "a court . . . must consider the totality of the evidence before the judge or jury"); TEX. R. APP. P. 44.1 (reversible error in a civil case requires the court of appeals to conclude that the error complained of probably caused the rendition of an improper judgment or probably

prevented the appellant from properly presenting the case to the court of appeals). The judgment at issue is the termination of Jacob's parental rights; therefore, it was Jacob's burden to establish that but for his trial counsel's deficient performance, the trial court would not have terminated his parental rights on any proper theory.

Jacob argues that his trial counsel should have noticed that he had a history of mental health issues based on his responses in the medical history report that was attached to the affidavit of relinquishment. On that document, he lists depression as a form of mental illness from which he, his grandmother, aunt, and father have suffered. He indicated that his mother, grandmother, and aunt suffer from bi-polar disorder but did not indicate that he was bi-polar. Jacob contends that this disclosure should have alerted his attorney to his mental health issues or that his attorney should have questioned him prior to the execution of the affidavit to determine if there was any reason he would not be voluntarily signing the affidavit.

At the hearing on the motion for new trial, Jacob's trial counsel testified that the first time he knew of Jacob's not taking prescription medications was at the final hearing. He had spent a good deal of time with Jacob the day he signed the affidavit and had visited him at the prison several months prior to that date when Jacob was taking his medications. His demeanor was not any different between the two visits. While his trial counsel stated that he did not inquire as to Jacob's medical condition the day he executed the affidavits, he did indicate that he had reviewed the affidavits with

Jacob and that he was able to converse with Jacob about the case and never had any doubts as to his competency.

Additionally, Jacob testified at a hearing on the day that he signed the affidavit that he had decided to sign the affidavit and that he understood that it was irrevocable. Part of the agreement for him signing the affidavit was that voluntary relinquishment would be the only ground on which the Department would seek termination at the final hearing and he indicated that he understood that agreement. He testified that termination and adoption was in his child's best interest, and that he and the proposed adoptive father had agreed that he would receive letters and photos twice a year but would not be allowed to write back.

There is nothing in the record besides Jacob's testimony at the final hearing that he was not thinking clearly to indicate that he was affected in any way by the lack of medication. At all other times he appeared to understand the proceedings, understood the deal he had made with the Department and the adoptive parents, but changed his mind prior to the final hearing. We also note that the Department had alleged seven separate grounds for the termination of his parental rights and if the trial court had found Jacob's affidavit to be involuntarily executed, the Department could have sought termination on any of the other six grounds because the agreement not to terminate on any other ground would no longer be enforceable. We hold that Jacob has not met his burden to establish that, but for his counsel's errors, if any, that the result of the trial

would have been different based on the affidavit of relinquishment or the other grounds alleged in the Department's pleadings. We overrule issue three.

*Conclusion*

Having overruled Jacob's issues, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed November 16, 2011
[CV06]