### IN the INTEREST OF J.H. and J.H., Children

### No. 05–15–01338–CV

Court of Appeals of Texas, Dallas.

Opinion Filed March 16, 2016

---

Hannah Stroud, McKinney, TX, for appellants.

John Rolater, Alyson Marie Dietrich, McKinney, TX, for appellees.

Before Justices Lang, Evans, and Whitehill

1. *Holley v. Adams,* 544 S.W.2d 367 (Tex.

## OPINION

Opinion by Justice Whitehill

Appellant F.G. (Mother) appeals the trial court's order terminating her parental rights to her two children, J.H. and J.H, in connection with her plea bargain for deferred adjudication in a related child endangerment case. She raises two issues on appeal:

One, she argues that the trial court erred by denying her motion for new trial because she proved that her affidavit of voluntary relinquishment was procured by fraud or duress due to pressure from her related criminal case.

Two, she argues that the trial court's finding that termination was in the children's best interest was supported by legally and factually insufficient evidence because (i) her affidavit of relinquishment alone was not sufficient evidence, and (ii) the other evidence of the *Holley* [1] factors was "bare-bones at best."

As discussed below and based on the evidence before us, we conclude that the trial court did not abuse its discretion by determining that Mother's agreement to relinquish her parental rights to her two children was voluntary and thus denying Mother's motion for new trial. We also conclude that Mother's issue attacking the best-interest finding is barred by family code § 161.211(c). Accordingly, we affirm the trial court's judgment.

## I. PROCEDURAL HISTORY

The Texas Department of Family and Protective Services on January 15, 2015, filed its original petition to terminate Mother's parental rights to her children. The Department alleged that Mother has two sons, both of whose initials are J.H. The Department further alleged that the

1976).

older boy was then almost four and the younger boy was two years and two months old. The Department sought emergency orders, alleging that there was an immediate danger to the children's physical health or safety.

According to the affidavits attached to the petition, the two boys were taken to Parkland Hospital with extensive burns a few days before the case was filed. According to one affiant, a caseworker for the Department's Dallas County Child Protective Services Unit, Mother said she left the boys alone in the kitchen while she was cooking and they somehow spilled hot grease on themselves in her absence. Another caseworker affiant said that Mother admitted using marijuana the day before the accident and methamphetamine a few weeks before the accident.

The petition sought several forms of relief, including emergency orders, temporary orders, and termination of the parental rights of both Mother and the children's alleged father, M.D.H. (Father).

The trial judge appointed the Department as the children's temporary managing conservator. He also appointed an attorney ad litem for the children.

On January 23, 2015, the trial judge signed a temporary order (i) appointing Mother and Father as the children's temporary possessory conservators, (ii) requiring them to participate in various counseling services, and (iii) imposing other requirements on them, such as submission to random drug testing.

On February 12, 2015, the Department filed a status report stating that the "primary goal" was family reunification and the "concurrent goal" was relative adoption. The report noted that Father had not been located and appeared to be evading the authorities, and it noted "continued concerns" that Mother was assisting him in his evasion.

Three months later, the Department filed a permanency plan and progress report. That report said that Mother had tested positive for marijuana and that Father was not participating in services. The report further said that the "primary permanency goal" was relative adoption and that the "concurrent permanency goal" was unrelated adoption.

On August 19, 2015, a family service plan evaluation was filed. The evaluation said that on July 30, 2015, Mother was indicted for child endangerment related to the burn incident. The evaluation also said that Mother and Father had admitted to a police detective that they were "coming down" from methamphetamine use when the children were burned. The evaluation said that Mother's circumstances generally had not changed since January and that there would be a serious risk of future harm if the children were returned to her.

Two days later, the trial judge referred the case to mediation. The judge also set the case for trial on November 30, 2015.

The case was resolved on October 15, 2015. First, the case was mediated, and at the mediation Mother and Father each signed an irrevocable affidavit of voluntary relinquishment of parental rights. The affidavits stated that Mother and Father "freely, voluntarily, and permanently" relinquished their parental rights and duties.

Next, the affidavits were filed with the court, and the parties appeared before a visiting judge to accomplish terminating the parents' rights. Mother testified that she had "pled out" her criminal case earlier in the day and that part of her plea agreement was to relinquish her parental rights. Mother also testified, while weep-

ing, that she believed termination of her rights was in her children's best interest.

Father also appeared and testified that he believed that his agreement to terminate his parental rights was in the children's best interest.

Additionally, the CPS supervisor and the CASA volunteer both provided testimony supporting the finding that terminating Mother's parental rights to her two children was in the children's best interest.

Thereafter, Mother, Father, and the visiting judge all signed the final order terminating Mother's and Father's parental rights. The final order found by clear and convincing evidence that Mother and Father had executed affidavits of relinquishment of parental rights and that termination was in the children's best interest.

But two weeks later, on October 30, 2015, Mother filed a motion for new trial and to set aside her affidavit of voluntary relinquishment claiming that her agreement to relinquish her parental rights was not voluntary. The presiding judge heard the motion on November 13, 2015, and orally denied it.

Mother timely filed her notice of appeal.

## II. ANALYSIS

**A. Mother's Issue One: Was the trial court's denial of Mother's motion for new trial, based on its finding that Mother voluntarily signed her relinquishment affidavit, an abuse of discretion?**

### 1. Standard of Review.

We review the denial of a motion for new trial for abuse of discretion. *In re A.H.J.*, No. 05-15-00501-CV, 2015 WL 5866256, at *5 (Tex.App.–Dallas Oct. 8,

2015, pet. denied) (mem.op.). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex.2003). "Under an abuse of discretion standard, the appellate court defers to the trial court's factual determinations if they are supported by evidence, but reviews the trial court's legal determinations de novo." *Stockton v. Offenbach,* 336 S.W.3d 610, 615 (Tex.2011). In the new-trial context, the trial court is the factfinder and accordingly is the sole judge of the witnesses' credibility. *Hanners v. State Bar of Tex.,* 860 S.W.2d 903, 908 (Tex. App.–Dallas 1993, writ dism'd).

### 2. Applicable Law.

A trial court may terminate the parent-child relationship if it finds by clear and convincing evidence that (i) the parent has executed an unrevoked or irrevocable affidavit of relinquishment of parental rights and (ii) termination is in the child's best interest. TEX. FAM.CODE ANN. § 161.001(b)(1)(K) (West Supp.2015); *id.* § 161.001(b)(2).[2] " 'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2014).

To support a termination order, an affidavit of voluntary relinquishment must be voluntarily executed. *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex.2014). The State bears the burden of proving voluntariness by clear and convincing evidence. *Id.* at 115. "An involuntarily executed affidavit is a complete defense to a termination suit based on section

**2.** Section 161.001 was amended after this suit was filed in January 2015. Those amendments renumbered the subsections relevant to this case but did not change their substance. For ease of reference, we cite the current version of § 161.001.

161.001(1)(K)." *Id.* at 113 (referring to what is now § 101.001(b)(1)(K)).

▮ A direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment "is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit." Fam. § 161.211(c) (West 2014). A motion for new trial is a direct attack on a judgment. *See PNS Stores, Inc. v. Rivera,* 379 S.W.3d 267, 271 (Tex.2012).

Here, Mother does not argue that the evidence admitted at the termination hearing was insufficient to support the trial court's implicit finding that Mother voluntarily executed her affidavit of relinquishment. Rather, she argues that the evidence she produced at the new-trial hearing established that the affidavit was procured by fraud or duress. For the reasons discussed below, we conclude that the State carried its burden.

**3. Application of the Law to the Facts.**

**a. Did the trial court abuse its discretion by not finding fraud in the execution of Mother's affidavit of relinquishment?**

▮ The first step in answering this question is to define "fraud" as used in family code § 161.211. There is no statutory definition, so we give the word its ordinary meaning. *See State v. $1,760.00 in U.S. Currency,* 406 S.W.3d 177, 180 (Tex. 2013) (per curiam) ("Undefined terms in a statute are typically given their ordinary meaning."). Our sister court of appeals in Texarkana gives fraud in this context its ordinary tort-law meaning: a false, material representation that is made knowingly or recklessly, with intent to induce reliance, and that induces reliance. *In re K.D.,* 471 S.W.3d 147, 157 (Tex.App.–Texarkana 2015, no pet.) (construing family code § 161.211(c)).

▮ Mother, however, citing *Vela v. Marywood,* 17 S.W.3d 750 (Tex.App.–Austin 2000), *pet. denied,* 53 S.W.3d 684 (Tex. 2011) (per curiam), argues that fraud can include "overreaching" and being "cheated" into taking an action one would not otherwise have done. But Mother does not explain how these definitions materially differ from the ordinary definition of fraud let alone how any such difference would affect this case. Furthermore, the *Vela* court was not interpreting § 161.211(c), and *Vela* itself notes that "[o]verreaching is generally synonymous with fraud." *Id.* at 761. We agree with *In re K.D.* and give "fraud" its ordinary meaning as stated in that opinion.

In this case, Mother does not identify any misrepresentations that were made to her to induce her to sign the relinquishment affidavit. At most, she testified that she did not understand the proceedings that took place the day of the termination hearing. That testimony, however, does not reflect fraud. *See In re K.D.,* 471 S.W.3d at 157.

We have nonetheless reviewed the new-trial hearing record, and we see no evidence that anyone misled Mother about the effect of her relinquishment affidavit before she signed it. Moreover, Mother's court-appointed attorney testified at the new-trial hearing that she explained the meaning of relinquishment of parental rights to Mother probably three or four times, and Mother was able to state back to her attorney that she understood what it meant. On the day of the mediation, Mother read the affidavit and asked her attorney questions about it. Her attorney also testified that Mother understood the affidavit was irrevocable.

▮ A trial court does not abuse its discretion as to factual determinations if

there is some evidence to support the court's ruling. *Stockton*, 336 S.W.3d at 615. We conclude that the trial court did not abuse its discretion by rejecting Mother's fraud argument.

**b. Did the trial court abuse its discretion by refusing to find that there was duress in the execution of Mother's relinquishment affidavit?**

■ The family code does not define "duress" as used in § 161.211(c). But both parties direct us to *In re D.E.H.*, in which our sister court in Fort Worth said that duress as used in that statute "occurs when, due to some kind of threat, a person is incapable of exercising her free agency and unable to withhold consent." 301 S.W.3d 825, 829 (Tex.App.–Fort Worth 2009, pet. denied) (en banc) (plurality opinion).

But, in other contexts, courts have held that duress requires (1) improper or unlawful conduct, either actual or threatened, that (2) is intended to and (3) does interfere with another's exercise of free will and judgment. *See, e.g., Dallas Cty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 878–79 (Tex.2005); *McCord v. Goode*, 308 S.W.3d 409, 413 (Tex.App.–Dallas 2010, no pet.). The difference between these cases and *In re D.E.H.*, as they concern the elements of duress, is that *In re D.E.H.*'s definition does not require that (1) the conduct allegedly constituting duress be unlawful or a threat of unlawful conduct or (2) the person allegedly imposing the duress act with the intent to deprive the other person of his or her free will; whereas, *Bolton* and *McCord* include both elements in their duress requirements.

We need not, however, decide here whether duress under § 161.211(c) requires proof (1) of unlawful conduct or a threat of unlawful conduct or (2) that the

actor intended to interfere with the parent's exercise of free will and judgment, because there is legally and factually sufficient evidence that Mother voluntarily agreed to relinquish her parental rights.

Here, Mother argues that duress arose from the events that happened on the day the termination occurred. She argues that mediation began around 9:00 a.m., and her plea agreement in which she agreed to relinquish her parental rights was negotiated and finalized within the next three hours. After the plea was finalized, she argues that she had to choose between executing the affidavit, on the one hand, and refusing to execute it and going to jail, on the other. That is, she says that she was impermissibly forced to choose between her constitutional liberty right, on one hand, and her constitutional parental relationship, on the other.

Specifically, at the new-trial hearing, Mother identified several events that she felt pressured her to sign the affidavit:

One, her lawyer told her that she would lose her children anyway if she went to jail, so she might as well get a good deal in her criminal case.

Two, both her lawyer and the mediator told her that it would be selfish of her not to relinquish her rights.

Three, she was told she would stay in jail until her next CPS hearing in December if she did not sign the affidavit.

Later in her testimony, she said that she would not have signed the affidavit but for her pending criminal case.

However, we reject Mother's arguments for these reasons:

First, the trial judge was entitled to make credibility determinations at the new-trial hearing, and he was entitled to disbelieve or discount Mother's testimony that she felt pressure to sign the affidavit.

*See Hanners,* 860 S.W.2d at 908. In this instance, the record shows that the trial judge paid close attention to Mother's testimony, asking her many questions himself. Indeed, at the end of the new-trial hearing, the judge stated that Mother's testimony was not credible. He could reasonably reject her testimony suggesting that she involuntarily signed the affidavit.

Second, accepting Mother's evidence at face value, that evidence did not show that the "pressure" placed on her rose to such a level that it overcame her free will and judgment. Her execution of the plea agreement whereby she promised to relinquish her parental rights was undoubtedly a factor in her decision to execute the affidavit of relinquishment, but there is no evidence that the plea agreement overcame her free will and judgment. That a parent feels pressure or emotional upset when she signs an affidavit does not itself render the affidavit involuntary. *In re A.H.,* No. 09–14–00291–CV, 2014 WL 7183973, at *7 (Tex.App.–Beaumont Dec. 18, 2014, no pet.) (mem.op.).

Third, contrary evidence suggested that Mother acted voluntarily. For example, letters Mother wrote while in jail said that she wanted to get out of jail, that the State's offers involved jail time, and that CPS was seeking to terminate her parental rights. She also said that her lawyer had told her that her CPS case "wasn't looking good" and that if she got probation the district attorney would probably want her to "sign [her] rights over for the boys." This evidence shows that Mother knew and considered her situation and options before the mediation and termination occurred. And Mother's attorney testified that she had discussed all of Mother's options with her before the mediation date, so the course of events did not take Mother by surprise. All of this evidence tends to show that Mother had sufficient time to consider and weigh her options, which supports the premise that she acted voluntarily and of her own free will in signing the affidavit.

Although Mother relies on *In re N.P.T.,* 169 S.W.3d 677 (Tex.App.–Dallas 2005, pet. denied), to support her argument, that opinion supports our conclusion. In that case, the mother of two children moved to terminate the father's parental rights. *Id.* at 678–79. The father was simultaneously being prosecuted for possessing child pornography and indecency with a child. *Id.* During a break in the father's criminal jury trial, he accepted a plea agreement that included a requirement that he execute a voluntary relinquishment affidavit. *Id.* at 680. The father executed the affidavit, and his rights were terminated. *Id.* at 679–80. On motion for new trial, the father argued that he did not voluntarily execute the affidavit because he was "rushed," "the courtroom was just a boilermaker," and he signed the affidavit "at, for all intents and purposes, the point of a gun." *Id.* at 680, 681. We rejected the father's argument that the affidavit was procured by duress or coercion, concluding that he knowingly and voluntarily executed the affidavit. *Id.* at 681.

*In re N.P.T.* addressed an even more extreme situation than existed here because the father in *N.P.T.* executed the affidavit in the middle of his criminal trial. By contrast, Mother's criminal trial had not begun and there were no criminal proceedings scheduled on the day of the CPS mediation. There was thus less pressure on Mother than the *N.P.T.* father faced.

For the above reasons, we conclude that the trial court did not abuse its discretion by rejecting Mother's duress argument and thus reject Mother's first issue on appeal.

**B. Mother's Issue Two: Was the evidence legally or factually insufficient to support the finding that termination was in the children's best interest?**

 Mother's second issue challenges whether sufficient evidence supports the trial court's finding that terminating Mother's parental rights was in the children's best interest. The State argues, and we agree, that family code § 161.211(c) bars Mother's argument.

Section 161.211(c) provides: "A direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights ... is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit." FAM. § 161.211(c). Because this statute is clear and unambiguous, we give effect to its plain meaning. *See Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46 (Tex.2015).

An appeal is a direct attack on a judgment or order. *See PNS Stores, Inc.*, 379 S.W.3d at 271. The order terminating Mother's parental rights is based on her relinquishment affidavit. Accordingly, Mother cannot make any arguments on appeal except arguments relating to fraud, duress, or coercion in the execution of the affidavit. Mother's second issue does not relate to fraud, duress, or coercion in the execution of the affidavit. Accordingly, § 161.211(c) defeats her second issue on appeal. *See Moore v. Brown*, 408 S.W.3d 423, 438–39 (Tex.App.–Austin 2013, pet. denied) (section 161.211(c) barred argument that termination order violated Virginia court's exclusive jurisdiction under the UCCJEA).[3]

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

---

3. We note that there are some cases involving similar facts in which appellate courts have first upheld a relinquishment affidavit against a § 161.211(c) challenge and then proceeded to review the sufficiency of the evidence to support the best-interest finding. *See, e.g., In re K.L.G.*, No. 04–15–00522–CV, 2015 WL 7562843, at *2–5 (Tex.App.–San Antonio Nov. 25, 2015, no pet.) (mem.op.); *In re K.D.*, 471 S.W.3d at 156–62, 174–78. But there is no indication in those opinions that the appellate court considered the question of whether § 161.211(c) barred review of the best-interest findings.